**MOTION PICTURE ASSOCIATION OF AMERICA, INC., Appellant,**

**v.**

**Ralph OMAN, et al.**

**No. 91–5005.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 14, 1992.

Decided July 14, 1992.

Dennis Lane, with whom Richard M. Cooper and Robert J. Shaughnessy, Washington, D.C., were on the brief, for appellant. Arthur Scheiner, Washington, D.C., also entered an appearance, for appellant.

Fred E. Haynes, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., and Dorothy Schrader, Gen. Counsel, and William J. Roberts, Sr. Atty., U.S. Copyright Office, Washington, D.C., were on the brief, for appellee Ralph Oman.

Stuart F. Feldstein, with whom Michael S. Schooler and Loretta P. Polk, Washington, D.C., were on the brief, for appellee National Cable Television Ass'n, Inc., Brenda Lee Fox and Seth A. Davidson, Washington, D.C., also entered appearances, for appellee.

Before: BUCKLEY, SENTELLE, and RANDOLPH, Circuit Judges.

Opinion for the court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

The Motion Picture Association of America (MPAA) asked the Copyright Office to engage in a retroactive rulemaking. The Office promulgated the requested regulation, but refused to apply it retroactively. On MPAA's complaint, the district court found in favor of the Office for a very basic reason. In adjudication, retroactivity is the norm; in legislation it is the exception. In rulemaking, the administrative analogue to legislation, exceptions are fewer still. Agency power is derived from statutes. If Congress has not conferred retroactive rulemaking power on an agency, the agency has none to exercise. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988). The Copyright Office has no such power and we therefore affirm.

I

The Copyright Act establishes a compulsory license system permitting cable television operators to retransmit copyrighted broadcast programming without having to secure permission from each individual copyright owner. 17 U.S.C. § 111. The cable operators pay royalties twice a year to the Copyright Office, according to a statutory formula based on the operator's "gross receipts." 17 U.S.C. § 111(d)(1)(B). The royalties are then distributed to the copyright owners by the Copyright Royalty Tribunal. 17 U.S.C. § 111(d)(2)–(4).

By the early 1980's, many cable operators were offering packages (called "tiers") including both broadcast and non-broadcast channels. But the operators' royalty payments for broadcast programming were based on the "gross receipts" from whatever packages the operators offered, even if the packages included both broadcast and non-broadcast programming. The Office instituted a rulemaking proceeding to address the potential overcompensation to copyright owners inherent in this scheme. In 1984 the Office decided that it would be too difficult to disaggregate these packages so that "gross receipts" would be based only on the broadcast component of the packages. 49 Fed.Reg. 13,029 (1984).

The old scheme thus survived, and the cable operators sued. They initially met success. The District Court for the District of Columbia struck down the Office's 1984 rule as inconsistent with the Act and ordered the Office to revise it. *Cablevision Co. v. Motion Picture Ass'n*, 641 F.Supp. 1154 (D.D.C.1986) (*Cablvision I*). Seventeen months later, this court reversed. *Cablevision Sys. Dev. Co. v. Motion Picture Ass'n*, 836 F.2d 599 (D.C.Cir.1988) (*Cablevision II*).

What concerns us here is the period between *Cablevision I* and *Cablevision II*, while the appeal was pending. Because the district court's order remained in effect for these seventeen months, no valid rule existed to govern how operators were to calculate "gross receipts." The old rule had been invalidated, and the Office had yet to issue a new one. During the void, each cable operator made up its own rule, and paid whatever royalties it saw fit under a formula of its own devising. Naturally, these methods varied widely.

Anticipating reversal, the Office issued an interim rule requiring operators to keep records detailing what they would have paid under the stricken rule. 51 Fed.Reg. 30,214 (1986). After this court restored the Office's rule in *Cablevision II*, the Office issued a "Policy Decision" ordering cable operators to make up the difference between what they paid during the pendency of the *Cablevision* appeal and what they would have paid had the rule been in effect. 53 Fed.Reg. 2493 (1988). The cable operators complied with this order and tendered more than $100 million in "underpayments."

MPAA, a group including broadcast copyright owners, was not satisfied. The Office had not assessed interest on the "underpayments." MPAA therefore filed a "Petition for Rulemaking" with the Copyright Office in 1988, seeking a "rule" requiring the cable operators to pay interest on the *Cablevision* payments. MPAA attached a "Proposed Rule," which was headed "Substance of New § 201.17(*l*)." The Office duly initiated a rulemaking proceeding in response. It issued a "Notice of inquiry," and solicited comments on a proposed rule governing interest on late payments. 53 Fed.Reg. 16,567 (1988). The Office also specifically invited comments on the question whether it had the authority to apply such a rule retroactively to the *Cablevision* payments. *Id.* at 16,568. After a period of comment, the Office published a final regulation requiring interest on all future late royalty payments, but declined to apply the rule retroactively. 54 Fed.Reg. 14,217 (1989). The proceedings again shifted to district court, where MPAA challenged the Office's ruling on retroactivity. The court upheld the Office's decision, 750 F.Supp. 3 (D.D.C.1990), and this appeal followed.

II

■■■ No one disputes the Office's authority to promulgate a rule governing interest on late payments. The only issue is retroactivity. Because MPAA wanted some sort of retroactive decision, it doomed itself from the beginning by asking for a rulemaking. Agencies do not have authority to promulgate retroactive rules unless Congress gives them that authority in express terms. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. at 208, 109 S.Ct. at 471; *see also Georgetown Univ. Hosp. v. Bowen*, 821 F.2d 750 (D.C.Cir.1987). The Copyright Act does not contain such express terms. MPAA was therefore asking for something the Office could not give as a matter of law. A rule promulgated by the Office can only be prospective.

We recognize that in *Bradley v. Richmond School Board*, 416 U.S. 696, 710–17, 94 S.Ct. 2006, 2015–19, 40 L.Ed.2d 476 (1974), the Court indicated that newly-enacted statutes should apply retroactively to pending cases if no manifest injustice would result. To this extent, *Bradley* conflicts with the statement in *Bowen* that statutes should not be read to have retroactive effect unless Congress expressly states otherwise. 488 U.S. at 208, 109 S.Ct. at 471. *See Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 836–37, 110 S.Ct. 1570, 1576–77, 108 L.Ed.2d 842 (1990); *id.* at 840, 110 S.Ct. at

1578 (Scalia, J., concurring). This unresolved conflict has no bearing on this case. The holding of *Bowen* is that agencies do not have the authority to promulgate retroactive rules unless Congress has expressly said they do. Apart from the question whether a case was actually pending at the time the Office issued its rule, and whatever the continuing vitality of *Bradley*, we are not concerned here with the retroactive effect of a statute.

■ MPAA presses several arguments concerning other subjects, only two of which merit discussion. The first is that the Office actually engaged in an adjudication, despite MPAA's request for a rulemaking. It characterizes the proceeding as a hybrid—a rulemaking with respect to future late payments, and an adjudication of the *Cablevision* payments. MPAA asks us to review what it sees as the merits of this adverse "adjudicatory" outcome.

We reject this argument. From beginning to end, the proceeding had all the characteristics of a rulemaking. MPAA began by petitioning for a rulemaking in accordance with the Administrative Procedure Act (5 U.S.C. § 553(e)). It attached its "Proposed Rule," a "New § 201.17(*l*)." The Office also adhered to the APA's rulemaking procedures. It issued a notice of inquiry, published in the Federal Register. 5 U.S.C. § 553(b). It gave interested persons an opportunity to participate through the submission of written comments. 5 U.S.C. § 553(c). The Office published the final "rule" in the Federal Register. 5 U.S.C. § 553(d); *see* 54 Fed.Reg. at 14,221; 37 C.F.R. § 201.17(i). The decision was of general application only. 5 U.S.C. § 551(4); *see United States v. Florida East Coast Ry.*, 410 U.S. 224, 245, 93 S.Ct. 810, 821, 35 L.Ed.2d 223 (1973). The Office obviously thought it was engaged in a rulemaking. *See City of Chicago v. FPC*, 458 F.2d 731, 739 (D.C.Cir.1971). Its decision was not a hybrid. The Office did not purport to decide any individual case. It did not determine whether any cable operator in particular owed interest on the *Cablevision* payments. The Office merely decided that it would be inequitable to impose the rule retroactively, assuming there were cable operators who would have been liable. 54 Fed.Reg. at 14,219–20. Every time a rule is applied prospectively only, as *Bowen* requires, past transactions are necessarily affected insofar as the rule is not applied to them. But that does not make the rule into an adjudication. *See Bowen*, 488 U.S. at 220, 109 S.Ct. at 477 (Scalia, J., concurring). The proceeding was a rulemaking.

■ MPAA's second argument is that the statute foreclosed the Office's decision to proceed solely on a prospective basis (by rulemaking). MPAA is forced to admit up front that section 111 of the Act is silent on the entire question of interest. It seeks to fill in the blank with what it calls "the statutory presumption in favor of interest." Given this "presumption," MPAA insists that the Office had no choice but to award the copyright owners the interest retroactively in an adjudication.

The presumption to which MPAA refers is actually the federal common law rule that a court should ordinarily award prejudgment interest when a statute is silent on the matter. *See, e.g., Rodgers v. United States*, 332 U.S. 371, 373, 68 S.Ct. 5, 6–7, 92 L.Ed. 3 (1947); *Gorenstein Enterprises v. Quality Care–USA*, 874 F.2d 431, 436 (7th Cir.1989). As a common law rule, the presumption is not really a "tool of statutory construction." Instead, the court orders the interest payments on its own authority. This is because interest compensates for the time value of money, and thus is often necessary for full compensation. *Cf. Oklahoma Aerotronics, Inc. v. United States*, 943 F.2d 1344, 1348 (D.C.Cir.1991). Even so, whether pre-judgment interest is to be awarded is subject to the discretion of the court and equitable considerations. *Frank Music Corp. v. Metro–Goldwyn–Mayer Inc.*, 886 F.2d 1545, 1550–53 (9th Cir.1989). A discretionary power emanating from the federal courts is not a canon of construction. It does not allow a court to interpret an otherwise silent statute as compelling an agency to exercise a like power. *Cf. Wagner Seed Co. v. Bush*, 946 F.2d 918, 924–25 (D.C.Cir.1991).

In short, once the Office decided to address the question of interest, the statute

did not require it to do so in a retroactive adjudication. Because the statute did not command either course, the agency was free to proceed by rulemaking or adjudication in its sound discretion under the Supreme Court's second *Chenery* decision. *SEC v. Chenery Corp.*, 332 U.S. 194, 202–03, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947). (The National Cable Television Association contends that the Office has no such adjudicatory authority; we are simply assuming, not deciding, that it does.) That the Office chose to proceed by rulemaking should not be surprising; that is what MPAA wanted. And in granting MPAA's request, the Office followed the dictates of *Bowen* and applied its new rule prospectively only.

■ One final point. The Office erroneously believed that the question whether its rule could be applied retroactively was governed by *Retail, Wholesale & Department Store Union v. NLRB*, 466 F.2d 380 (D.C.Cir.1972), rather than *Bowen*. In *Retail, Wholesale* the agency had reversed its policy by so announcing in an adjudication. In that situation, an agency must weigh several equitable factors in deciding whether to apply the changed policy retroactively. 466 F.2d at 390. Because the Office was engaged in a rulemaking, *Retail, Wholesale* was not on point. Requiring the agency to revisit the issue would be pointless, however, because *Bowen* and the Copyright Act leave no doubt that the Office's rule had to be prospective only. The Supreme Court's well-known first *Chenery* decision does not require a remand when the agency comes to the only possible legal result (here prospectivity), even if it states the wrong legal reason. *SEC v. Chenery Corp.*, 318 U.S. 80, 87, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943); Friendly, Chenery *Revisited: Reflections on Reversal and Remand of Administrative Orders*, 1969 DUKE L.J. 199, 210.

The judgment of the district court is affirmed.