**BLAUSTEIN & REICH, INC.,**
**d/b/a Bob's Gun & Tackle**
**Shop, Plaintiff,**

v.

**Bradley A. BUCKLES, Director,**
**Bureau of Alcohol, Tobacco**
**and Firearms, Defendant.**

**No. Civ.A. 2:01CV875.**

United States District Court, E.D. Virginia, Norfolk Division.

Sept. 17, 2002.

536

Richard E. Gardiner, Stephen Porter Halbrook, Fairfax, VA, for plaintiffs.

Lawrence Richard Leonard, Office of the U.S. Attorney, Norfolk, VA, Judry Laeb Subar, U.S. Department of Justice, Washington, DC, for defendants.

## *OPINION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

MORGAN, District Judge.

### PRELIMINARY STATEMENT

This matter comes before the Court on the Defendant's motion for summary judg-

ment. The Court held a hearing on the motion on August 14, 2002 and granted the motion for summary judgment from the bench. This Order sets forth more completely the Court's reasoning.

The Bureau of Alcohol, Tobacco and Firearms (ATF) has a statutory duty pursuant to the Gun Control Act of 1968(GCA), as amended[1], to trace firearms to keep them out of the hands of criminals, unauthorized juveniles, felons, and other prohibited persons, and to assist law enforcement officials in their efforts to reduce crime and violence. The ATF's statutory duty to trace guns is in tension, however, with the statutory prohibition that forbids the ATF from establishing a national firearms registry. The ATF accomplishes its gun trace function without a national registry by accessing where necessary records held on file by gun manufacturers, retail gun dealers, and others. In lieu of maintaining a centralized system of records in-house (e.g. a national gun registry), ATF requests specific records regarding an individual firearm from these entities in the context of each discrete gun trace. This system, as will be seen, is not without its limitations.

In February 2000, ATF prepared a report assessing the effectiveness of the Agency's gun tracing capability. BUREAU OF ALCOHOL, TOBACCO & FIREARMS, COMMERCE IN FIREARMS IN THE UNITED STATES (2000) [hereinafter COMMERCE IN FIREARMS]. Based on the findings in COMMERCE IN FIREARMS, ATF launched two new data collection efforts. It implemented these two data collection efforts by generating two different versions of "demand letters" to seek the type of information from gun dealers that would, according to the findings in COMMERCE IN FIREARMS, improve the effectiveness of the ATF gun tracing program.

The first version of the demand letter was challenged by a gun dealer in Maryland last year. The gun dealer prevailed at the District Court but the U.S. Court of Appeals for the Fourth Circuit reversed the District Court and ruled for the Government. *RSM v. Bureau of Alcohol, Tobacco and Firearms*, 254 F.3d 61 (2001). The second version of the demand letter gives rise to the case now before this Court on Defendant's Motion for Summary Judgment.

ATF's gun tracing capability under the GCA depends heavily on records maintained by the Federal Firearms Licensee (FFL). Bob's Guns, the Plaintiff, is an FFL because it is a retail gun dealer. Persons in the business of manufacturing, importing or dealing in firearms (or importing or manufacturing ammunition) are classified as FFLs and they must obtain a license from ATF (18 USC § 923(a)). As a condition of its license, each FFL must maintain records of importation, production, shipment, receipt, sale, or other disposition of firearms at its place of business for such period, and in such form, as ATF regulations prescribe (18 USC § 923(g)). So, when a gun is recovered from a crime scene or from the person of an individual who is forbidden access to guns (e.g. a felon or a juvenile), law enforcement officials oftentimes request a gun trace from ATF.

This crime gun trace process, and its limitations, are described in detail in COMMERCE IN FIREARMS at pages 19–20 & 22–27. ATF possesses records that identify the entity that manufactured the gun (or imported the gun into the country). In nearly all cases, however, ATF records do not identify the retail dealer, the first retail purchaser, nor any subsequent purchaser. ATF commences a gun trace by requesting from the manufacturer (or importer) the

---

1. Codified at 18 U.S.C. §§ 921–930.

identity of the person or organization to whom the gun was delivered. If the person or entity who received the gun from the manufacturer (or importer) is an FFL, then ATF can obtain disposition records for that gun on request. And so ATF gun tracking proceeds in daisy chain fashion through the distribution chain to the retail dealer. ATF then requests the dealer to examine its records to determine the identity of the first retail purchaser. The trail stops for ATF at the identity of the first retail purchaser because Federal law does not require unlicensed sellers to preserve transfer records, nor are gun owners required to keep a record of the serial number of their firearms or to report lost or stolen firearms. ATF therefore usually cannot trace a gun once the first retail purchaser sells the gun to another private party, or when the first retail purchaser loses the gun or has it stolen from him. This "secondhand sale" phenomenon creates a significant gap in the gun tracing system (including the possibility of multiple private party sales) that can make it difficult or impossible for ATF to trace the ownership of a gun.

The paper trail is re-established at least in part if a private party sells a gun to an FFL. The difficulty for ATF in this latter regard, however, is that ATF has no way of knowing that records of interest concerning a secondhand sale are on file at a particular FFL. There were in late 1999 some 100,000 or more FFLs at various locations around the nation. When attempting a gun trace following a secondhand sale, ATF has no way of knowing that one of these FFLs may have purchased the particular gun in question. There is no link in the records accessible to ATF between the first retail purchaser and the FFL who subsequently purchases a secondhand gun. This problem of the missing link means that the ATF gun tracing capability encounters serious limitations once a gun passes into private ownership.

COMMERCE IN FIREARMS evaluated the efficacy of the ATF gun tracing capability and gave rise to the new data collection effort challenged by Plaintiff in the instant case. ATF concluded that

> there is a subset of current dealers that have both a high volume of traces and for which more than half of those traces had a time to crime of less than three years. This particular indicator is a useful measure of the number of dealers whose guns move frequently and quickly end up in the wrong hands.

COMMERCE IN FIREARMS at 25.

ATF determined that Bob's Guns is one of the dealers with a high volume of crime gun traces and a short time to crime.[2]

On February 7, 2000, ATF sent a demand letter to Bob's Guns requiring Plaintiff to submit quarterly reports regarding secondhand guns obtained from non-FFLs. ATF required Bob's Guns to identify the manufacturer/importer, model of the firearm, caliber or gauge, and the serial number. ATF instructed the Plaintiff to forego submitting information about the individual from whom Bob's Guns acquired the secondhand gun or the individual to whom Bob's Guns transferred the secondhand gun. (Bob's Guns is obligated by the GCA as amended, however, to retain information regarding the seller's identity and the purchaser's identity on file and it is reasonable to expect that ATF would request that information in the context of a crime gun trace.) The purpose of this demand letter was to cure in part the

---

**2.** Time to crime is the time it took for a crime gun to move from the retailer to a crime scene.

ATF's "missing link" problem described above.

### Findings of Fact[3]

In accordance with Local Rule 56(B)[4], the Court's Findings of Fact will be those set forth at pages 8–12 of the Defendant's Memorandum of Law in Support of Defendant's Motion for Summary Judgment. The Court adopts the Defendant's "Statement of Undisputed Facts" in whole because the Plaintiff's reply brief contained no specifically captioned section listing the material facts that it wished to dispute. The Plaintiff's noncompliance with the requirements set forth in Local Rule 56(B) triggers the consequence set forth in that rule, e.g. the facts identified by the Defendant as material facts as to which there is no genuine issue in its opening brief are admitted. These admitted facts are as follow:

1. In a report issued in February 2000, ATF described how it has exercised its statutory authority to conduct gun traces from federally licensed firearms dealers. *See* Commerce in Firearms, A.R. 38.[5]

2. A firearms trace may be initiated when a federal, state or local law enforcement officer recovers a firearm, and the officer's law enforcement agency requests that ATF's National Tracing Center conduct a trace. Commerce in Firearms, A.R. 38. The Center then systematically tracks the movement of the firearm from its manufacturer or importer through the distribution chain to the first retail dealer, who is asked to identify the first retail purchaser. *Id.*, A.R. 39.

3. Federal firearms licensees fill a crucial role in ensuring the effective functioning of ATF's tracing system, a fact recognized by Congress when it required licensees to "respond immediately to, and in no event later than 24 hours after the receipt of" a request by ATF to trace a firearm in the course of a bona fide criminal investigation. 18 U.S.C. § 923(g)(7). *See also* 27 C.F.R. § 178.25a.

4. While firearms tracing can significantly aid law enforcement agencies in their efforts to solve crimes and detect trafficking patterns, the tracing system does have limitations. Commerce in Firearms, A.R. 44–46.

5. One weakness in the tracing system involves uncooperative dealers. Traces can be conducted in a timely manner and be completed successfully only if FFLs keep proper records and cooperate with ATF trace requests. In 1999, approximately .1% of FFLs were either nonresponsive to a trace request, slow to respond on at least three occasions, or gave incorrect information requiring a National Tracing Center recheck. A.R. 44. ATF

---

3. This opinion views the facts in the light most favorable to the Plaintiff.

4. Local Rule 56(B) provides as follows:

   Summary Judgment—Listing of Undisputed Facts: Each brief in support of a motion for summary judgment shall include a specifically captioned section listing all material facts as to which the moving party contends there is no genuine issue and citing the parts of the record relied on to support the listed facts as alleged to be undisputed. A brief in response to such motion shall include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute. In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.
   U.S. District Court for the Eastern District of Virginia, Local Rules of Practice 56(B).

5. References to "A.R. ___" are to the Bates stamp page numbers of the administrative record.

sent such dealers (including the plaintiff in *RSM*) a letter essentially requiring them to provide their acquisition and disposition records from the past three years, including the names of gun purchasers, and to continue to provide this information monthly until advised otherwise. A.R. 9–14.

6. Another key weakness inherent in the system involves secondhand guns. Because federal law only requires federal firearms licensees to maintain transfer records, ATF's tracing system does not allow for ready tracing of firearm sales beyond the first retail sale of a gun. *Id.*, A.R. 44, 45. Therefore, ATF cannot readily conduct a trace of a gun that has been either sold by, or stolen from, the first retail purchaser. *Id.* The difficulty in tracing such guns is a major problem facing the law enforcement community because more than half of ATF's gun trafficking investigations involve secondhand firearms. *Id.*

7. The data necessary to conduct traces of many secondhand guns does exist, because the GCA requires licensed dealers to maintain records of secondhand guns they acquire from unlicensed persons. Prior to the institution of the demand program at issue in this case, however, a regular gun trace could not be conducted on the basis of this information because these records are not routinely provided to ATF. Moreover, because no link exists between first and subsequent retail transactions, there is no way to track the gun to that FFL to request such records. A.R. 45.

8. ATF has analyzed its gun trace data in an effort, among other things, to determine how best to obtain access to dealer information on secondhand firearms so that it can be used in tracing these firearms. While ATF's statutory authority discussed above requires any firearms licensee to provide detailed and extensive record information when requested to do

so by letter from ATF, the government has used available data to develop a program of narrowly-focused data collection, asking for limited information from a small group of dealers. A.R. 9–14.

9. ATF trace data indicates that most of the new firearms that are traced are sold by a small number of licensed dealers. COMMERCE IN FIREARMS, A.R. 42. In calendar year 1998, for example, just slightly more than one percent of all licensed dealers were associated with ten or more firearms traces. *Id.* Those dealers accounted for more than half of all of the traces made to retail dealers for that year. *Id.*

10. This small group of dealers can be further narrowed by using a statistic known as "time to crime," which "refers to the time that it took for the crime gun to move from the retailer to a crime scene." A.R. 7. The average "time to crime" is about six years from the first retail sale. *Id.*, A.R. 43–44. Therefore, three years is considered a short time to crime, and is considered an important trafficking indicator, suggesting rapid movement to the illegal gun market. *Id.* Thus, by identifying those dealers that have ten traces or more per year with a short time to crime of three years or less, ATF can obtain a sense of which dealers tend to sell guns that are ultimately used in crimes. *Id.*, A.R. 44.

11. The fact that a dealer sells a relatively large number of guns that someone else uses in a crime does not necessarily indicate any wrongful action on the part of that dealer. COMMERCE IN FIREARMS, A.R. 41–42. Nonetheless, because dealers that sell significant numbers of new guns that quickly become crime guns are likely also to sell a significant number of used guns that eventually are used in crime, having high trace rate/low "time to crime" dealers provide information about guns that they purchase on the secondhand market will

give ATF information that it needs to conduct traces of secondhand guns. Attachment to Memorandum from Director, ATF, to Secretary and Deputy Secretary of the Treasury (Feb. 4, 2000), A.R. 12–14.

12. In response to the findings in the 2000 report, ATF decided to issue "demand letters" requiring certain gun dealers to provide ATF with some of the information that they are obligated to keep about firearms transactions. *Id.*, A.R. 9–14. Dealers such as the plaintiff in *RSM,* that had been uncooperative in assisting ATF in conducting traces, were required to provide a fairly broad scope of data about all firearms acquired and disposed of during the preceding three years, including the names of the persons from whom guns were acquired and to whom they were sold. *Id.* Dealers like Plaintiff here, with ten or more short time to crime traces the previous year, were asked, in accordance with the same statutory and regulatory authority that was involved in *RSM,* to provide a much more limited subset of this information, consisting only of the names of the manufacturers or importers, the serial numbers, the models, and the calibers or gauges of secondhand guns that such dealers obtained the previous year from nonlicensees. *Id.* Dealers were specifically told not to provide the names of the individuals from whom they had received the guns or to whom they had sold them. In the demand letter, ATF explained the fact that the FFL had a high number of traces of new crime guns with a short time to crime may mean that the FFL is also selling a high volume of secondhand guns used in crime. The letter also explained that without the requested information, ATF would not be able to trace these secondhand guns because they have passed through the hands of one or more nonlicensed purchasers. The letter required the FFLs to continue to submit this information on a quarterly basis until advised otherwise. *Id.*

13. ATF's records indicate that during calendar year 1999, Plaintiff was the first retail seller identified in ten traces involving guns with a time to crime of three years or less. A.R. 100–06. Therefore, ATF sent Plaintiff the demand letter being challenged here, asking for the limited information listed above for the secondhand guns taken into inventory by Plaintiff. A.R. 7–8.

14. Rather than complying with the demand letter, Plaintiff filed this lawsuit. Complaint, *passim.*

## OPINION

District courts may enter summary judgment only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Miller v. Leathers,* 913 F.2d 1085, 1087 (4th Cir.1990). The facts and inferences drawn from the pleadings must be viewed in the light most favorable to the nonmoving party. *Nguyen v. CNA Corp.,* 44 F.3d 234, 237 (4th Cir.1995). Summary judgment is appropriate when the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In order to successfully defeat a motion for summary judgment, a nonmoving party cannot rely on "mere belief or conjecture, or the allegations and denials contained in his pleadings." *Doyle v. Sentry Insur.,* 877 F.Supp. 1002, 1005 (E.D.Va.1995) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Rather, the nonmoving party must set forth specific facts through affidavits, depositions, interrogatories, or other evidence to show genuine issues for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. When the nonmoving party fails to make a sufficient showing establishing an essential element of his case and he bears the burden of proof on that issue, "there is 'no

genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other fact immaterial." *Id.* at 322, 106 S.Ct. 2548. *Anderson,* 477 U.S. at 254, 106 S.Ct. 2505.

As noted in the preceding section of this Opinion and Order, there is no genuine issue as to those facts listed as 1 to 14, above. This Court must now determine if these admitted facts prevent the Plaintiff from establishing an essential element of its case.

Demand letters, such as the one that ATF sent to Bob's Guns, are expressly authorized by 18 USC § 923(g)(5)(A) which provides in pertinent part:

> Each licensee shall, when required by letter issued by the Secretary ... submit on a form specified by the Secretary, for periods and at the times specified in such letter, all record information required to be kept by this chapter or such lesser record information as the Secretary in such letter may specify.

*Id.*[6]

However, as the U.S. Court of Appeals for the Fourth Circuit made clear in *RSM v. Bureau of Alcohol, Tobacco and Firearms,* 254 F.3d 61 (2001), the statutory authority conferred by 18 USC § 923(g)(5)(A) "does not grant BATF an unbounded delegation of authority to request record information". 254 F.3d at 66. The Fourth Circuit noted that ATF may not issue demand letters for "any purpose". *Id.* at 67. The Fourth Circuit also stated that ATF may not "issue limitless demand letters under section 923(g)(5)(A) in a backdoor effort to avoid section 926(a)'s protections for law-abiding firearms owners". *Id.* at 67. Likewise, the Fourth Circuit stated that ATF could not use demand letters "to establish a national firearms registry." *Id.* The Court approved of the demand letter at issue in *RSM* because it sought information from a narrow universe of FFLs which rendered the data developed by the demand letter in that case "a very far cry from the creation of a national firearms directory". *Id.* at 68.

With the contours for the authority conferred by 18 USC § 923(g)(5)(A) thus defined, this Court must now decide whether ATF may require compliance with the demand letter the agency issued to the Plaintiff.

Plaintiff argued in its Opposition Brief that the demand letter is improper for the following five[7] reasons: (1) It violates 18 USC § 923(g)(7) because the demand letter is not linked to a bona fide criminal investigation; (2) It violates 18 USC § 926(a) because the demand letter is a "rule or regulation prescribed after the date of the enactment of the Firearms Owners' Protection Act [May 19, 1986]" and it requires the FFLs records to be recorded or transferred to a facility of the United States; (3) It violates 18 USC

---

**6.** The Plaintiff relied upon legislative history to argue in its brief that § 923(g)(5)(A) forbids ATF from sending a demand letter to a law abiding gun dealer, such as Bob's Guns in the instant litigation. The Plaintiff argued that ATF may only send a demand letter to a dealer who has failed to comply with the GCA. The plain language of § 923(g)(5)(A), however, unambiguously commands that "each licensee" is subject to ATF's demand letter authority. The legislative history offered by the Plaintiff, therefore, will not be considered by the Court. *See, e.g., In re*

*Equipment Services, Inc.,* 290 F.3d 739, 745 (4th Cir.2002) ("When a statute is unambiguous, canons of construction prevent [a court] from considering outside sources, such as legislative history, to attempt to discern what Congress may or may not have intended to do.").

**7.** At oral argument the Plaintiff advanced three of these rationales, omitting from its presentation the arguments founded on 18 USC § 923(g)(7) and on the appropriations rider.

§ 926(a) because the demand letter gives ATF information the agency is using to create a system of firearms registration; (4) The demand letter violates the language in an appropriations rider that forbids ATF from using appropriated funds to centralize FFLs records of acquisition and disposition of firearms; and, (5) The demand letter violates the Administrative Procedures Act because it is arbitrary and capricious.

### 1. Is the demand letter illegal because it lacks connection to a criminal investigation?

■ Plaintiff builds its argument that the demand letter must have links to a bona fide criminal investigation in reliance on 18 USC § 923(g)(7) which reads in pertinent part as follows:

> Each licensee shall respond immediately to, and in no event later than 24 hours after the receipt of, a request by the Secretary for information contained in records required to be kept by this chapter as may be required for determining the disposition of 1 or more firearms in the course of a bona fide criminal investigation.

The problem with the Plaintiff's argument is that 18 USC § 923(g)(7) is a statutory provision obligating FFLs to respond quickly to certain types of ATF requests; it in no way limits the types of requests that ATF can levy on FFLs. For this reason, 18 USC § 923(g)(7) bears no relation to ATF's power to issue demand letters pursuant to 18 USC § 923(g)(5)(A). *RSM v. Bureau of Alcohol, Tobacco and Firearms*, 254 F.3d 61, 66 (4th Cir.2001).[8].

### 2. Does the demand letter violate 18 USC § 926(a) which prohibits ATF from creating "new rules" that require data from FFL records to be transferred to a facility of the United States after May 19, 1986?

The Plaintiff's argument challenging the demand letter relies on the passage in 18 U.S.C. § 926(a) which reads, in pertinent part, as follows:

> No such rule or regulation prescribed after the date of the enactment of the Firearms Owners' Protection Act [enacted May 19, 1986] may require that records required to be maintained under this chapter or any portion of the contents of such records, be recorded at or transferred to a facility owned, managed, or controlled by the United States....

*Id.*

■ The Plaintiff's argument has several difficulties. The "new rule" prohibition in 18 U.S.C. § 926(a) was enacted in 1986 in the same legislation that codified the ATF "demand letter" authority in § 923(g)(5)(A). It is illogical to think that Congress in 1986 conferred on ATF the statutory authority to issue demand letters while, in the same legislation, Congress barred ATF from using it. *See, U.S. v. Fisher*, 58 F.3d 96, 99 (4th Cir.1995), *cert. denied*, 516 U.S. 927, 116 S.Ct. 329, 133 L.Ed.2d 229 ("rules of statutory construction require that [a court] give meaning to all statutory provisions"). Even if the "new rule" prohibition in 18 U.S.C. § 926(a) somehow did apply, it would not apply here because the demand letter is not a "rule or regulation".[9] The demand

---

8. The Plaintiff sought to distinguish *RSM* because the gun dealer in that case was in violation of the GCA while the gun dealer in the case at bar is in compliance with the law. The Court believes the Plaintiff reads *RSM* too narrowly. Many, if not all, of the principles regarding the scope of the ATF's

§ 923(g)(5)(A) authority set forth by the Fourth Circuit in *RSM* would apply to FFLs whether they are in or out of compliance with the GCA.

9. The demand letter is the product of an adjudication, likely an informal adjudication, but

letter was issued pursuant to the statutory authority found at 18 USC § 923(g)(5)(A) which, like the demand letter itself, is not a "rule or regulation". Hence the "new rule" prohibition in 18 U.S.C. § 926(a) is inapplicable to the demand letter that ATF issued to Bob's Guns. *See* 254 F.3d at 66. Even if the Plaintiff could establish a linkage between the demand letter and a "rule or regulation", the pertinent rule or regulation can only be the one found at 27 C.F.R. § 178.126 which was prescribed in 1968, nearly twenty years before the cutoff date of 1986 set by Congress. *Id.* For these reasons, the demand letter at issue in the instant case is not proscribed by the "new rule" prohibition found in 18 USC § 926(a).

3. *Is the demand letter illegal because it violates the 18 USC § 926(a) prohibition on creation of a system of firearms registration?*

18 USC § 926(a) contains a clear prohibition regarding the establishment of "any system of registration of firearms, firearms owners, or firearms transactions or dispositions". As the U.S. Court of

Appeals for the Fourth Circuit made clear in *RSM*, ATF must steer well clear of this prohibition. 254 F.3d at 67.

The Fourth Circuit approved of the demand letter at issue in *RSM* because it sought information from a narrow universe of FFLs which rendered the data developed by the demand letter in that case "a very far cry from the creation of a national firearms directory". 254 F.3d at 68. In the instant case the scope of ATF's effort to collect information about secondhand gun sales from a discrete group of dealers including Plaintiff is also limited. In the most important respects, the demand letter issued to the Plaintiff is even narrower than the data collection that was challenged in *RSM*. Here, the ATF demand letter has been sent to those few FFLs with two specific traits (high trace rate/low time to crime). *See* Material Facts Not in Dispute 8–10. The number of FFLs who received the type of demand letter at issue in the instant case is less than 1% of all FFLs nationwide. *Id.* Moreover, the amount of information required of the Plaintiff in the instant case is relatively small, as compared to the amount of infor-

---

it is not a rule. *See, Yesler Terrace Community Council v. Cisneros,* 37 F.3d 442, 448 n. 5 (9th Cir.1994) ("An adjudication (which results in an order) is virtually any agency action that is not rulemaking."); *City of West Chicago v. U.S. Nuclear Regulatory Commission,* 701 F.2d 632, 644 (7th Cir.1983) ("Informal adjudications constitute a residual category including 'all agency actions that are not rulemaking and that need not be conducted through on the record hearings.'") One key criterion upon which courts rely when determining whether a given agency action is a rule or an adjudication is that a rule produces a decision which is of general application and affects the rights of broad classes of unspecified individuals. *Motion Picture Ass'n of America v. Oman,* 969 F.2d 1154, 1157 (D.C.Cir.1992); *see also, Yesler Terrace Community Council v. Cisneros,* 37 F.3d 442, 448 n. 5 (9th Cir.1994). Conversely, an adjudication occurs when agency action affects specif-

ic individuals in specific cases. *American Airlines v. Dept. of Transportation,* 202 F.3d 788, 798 (5th Cir.2000), *cert. denied,* 530 U.S. 1274, 120 S.Ct. 2740, 147 L.Ed.2d 1005; *Yesler Terrace Community Council v. Cisneros,* 37 F.3d 442, 448 n. 5 (9th Cir.1994); *Motion Picture Ass'n of America v. Oman,* 969 F.2d 1154, 1157 (D.C.Cir.1992). Another point of distinction between a rule and an adjudication is that a rule is prospective and has a definitive effect on individuals only after the rule is subsequently applied. *Hercules v. EPA,* 598 F.2d 91, 117 (D.C.Cir.1978); *Yesler Terrace Community Council v. Cisneros,* 37 F.3d 442, 448 n. 5 (9th Cir.1994). The demand letter in the instant case cannot be a "rule" because it affects a specific individual (i.e. the Plaintiff), as opposed to a broad class of individuals. Another indication that the demand letter is not a "rule" is that the demand letter is of immediate effect, as opposed to prospective effect.

mation that was required from the FFL in the *RSM* case. *See* Material Fact Not in Dispute 12. In *RSM*, the Fourth Circuit approved of a demand letter that required information concerning all firearms sales and purchases. 254 F.3d at 63. In the instant case, ATF has required the Plaintiff to submit information pertaining to the purchase and sale of secondhand guns, but not the purchase and sale of new guns. *See* Material Fact Not in Dispute 12. In *RSM*, the Fourth Circuit approved of a demand letter that required the FFL in that case to provide a wide range of information, including the purchasers' names. 254 F.3d at 63. In the case at bar, ATF has instructed the Plaintiff that it should not "include the name or other identifying information about either the individual from whom you acquired a secondhand gun or the individual to whom you transferred such a firearm".[10] *See* Material Fact Not in Dispute 12.

█ Because the demand letter in the instant case seeks to obtain less information than was sought in RSM, and because the demand letter in the instant case has been served on a very small minority of FFLs nationwide, the information being gathered by ATF is "a very far cry from the creation of a national firearms directory". 254 F.3d at 68. For these reasons, and because the data collection effort is directly linked to ATF's responsibility to conduct firearms traces, the demand letter does not violate the 18 USC § 926(a) prohibition regarding the establishment of "any system of registration of firearms, firearms owners, or firearms transactions or dispositions".

*4. Is the demand letter illegal because it violates the language in an appropriations rider that forbids ATF from using appropriated funds to centralize FFLs records of acquisition and disposition of firearms?*

Since 1978, Congress has included a provision in ATF's annual appropriations legislation that prohibits the agency from spending money "in connection with consolidating or centralizing, within the Department of the Treasury, the records, or any portion thereof, of acquisition and disposition of firearms maintained by Federal firearms licensees." Pub.L. No. 106–554, 114 Stat. 2763 (2000).[11] Plaintiff argues that the rider prohibits ATF from issuing the demand letter at issue in this case. In *RSM*, however, the Fourth Circuit rejected just such a construction of that very rider.

The Fourth Circuit's *RSM* decision held that to read the appropriations rider as preventing ATF from effecting any collection of the records that firearms dealers are statutorily required to maintain would render inoperative several amendments to the Gun Control Act enacted after the rider was first adopted, including section 923(g)(5)(A). 254 F.3d at 68. Such a view of the statute, the Court said, would violate the basic rule of statutory construction that requires a statute to be interpreted so as to give it meaning. *Id.* Rather, the Court noted that the rider had its origins in Congressional concern about ATF's attempt to collect all the sales records of all FFLs and the accompanying invasion of lawful firearms owners' privacy, *id.* at 67, and held it to be inapplicable to a data collection effort by ATF that is narrow and

---

**10.** Without the purchasers' and sellers' names ATF cannot use the data generated by this demand letter to create a national registry of firearms owners.

**11.** This is the citation for the restriction referenced in Plaintiff's complaint. However, as stated above, the restriction has been included in ATF's appropriations since 1978.

that is linked to ATF's responsibility to conduct firearms traces. *Id.* at 68.

■ For the reasons set forth previously in this Opinion, the Court is persuaded that the scope of ATF's effort to collect information about secondhand gun sales from a discrete group of dealers including Plaintiff is also limited; and in the most important respects, is even narrower than the data collection that was challenged in *RSM*. Likewise the Court concludes that the demand letter issued to Plaintiff in the instant case is directly linked to ATF's responsibility to conduct firearms traces. Therefore, because the demand letter was sent in order to assist ATF in fulfilling its statutory responsibility to assist law enforcement and to fight crime and violence, and in light of the limited reach of the letter, the appropriations restriction has no greater impact on the legitimacy of the demand letter at issue in this case than it did on the letter discussed in *RSM*.

5. *Is the demand letter illegal because BATF's decision making was "arbitrary and capricious" in violation of the Administrative Procedures Act?*

Demand letters are expressly authorized by the statute at 18 USC § 923(g)(5)(A). ATF, through submission of its Administrative Record has offered a well conceived rationale for the issuance of this particular demand letter. The material facts not in dispute, and the inferences therefrom viewed in the light most favorable to the Plaintiff, demonstrate that the ATF has, in the issuance of the demand letter to Plaintiff, made sound use of the statutory authority conferred on the agency by 18 USC § 923(g)(5)(A).

Each of the fourteen facts listed in this opinion are well supported in the Administrative Record. Plaintiff argued at the hearing that it should be permitted to supplement the Administrative Record.

But, "review of agency action is limited to the administrative record before the agency when it makes its decision. *See Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973)." *Trinity American Corp. v. U.S.E.P.A.,* 150 F.3d 389, 401 n. 4 (4th Cir.1998). Even if Plaintiff could show that it is entitled to supplement the Administrative Record (which it cannot) Plaintiff proffered none of the supplementary evidence with its reply brief or at oral argument. Instead, Plaintiff argued at the hearing that the evidentiary materials it wished the Court to consider were in Defendant's possession and were the subject of a pending motion to compel. *See,* Transcript of Proceedings at 20. Accordingly, Plaintiff argued, it should be permitted additional discovery prior to the Court taking action on the Defendant's summary judgment motion. The Court notes, however, that FRCP 56(f) requires that a party who wishes to delay summary judgment must support its argument for delay by submitting affidavits to the Court. *See, Nguyen v. CNA Corp.,* 44 F.3d 234, 242 (4th Cir.1995). This the Plaintiff has not done and, for this reason, the Court will not grant a continuance or other delay to allow Plaintiff to conduct additional discovery prior to the Court ruling on the Defendant's motion for summary judgment.

Having established that the case will be decided on the Administrative Record, the standard of review will be that set forth in the Administrative Procedure Act. *See* 5 U.S.C. § 706(2)(A). The Act "requires [a court] to uphold an agency action unless the action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *1000 Friends of Maryland v. Browner,* 265 F.3d 216, 229 (4th Cir.2001). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of the United*

*States v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). Rather, the court is to "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

Agency action is deemed arbitrary and capricious "if the agency relied on factors that Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Hughes River Watershed v. Johnson,* 165 F.3d 283, 287–88 (4th Cir.1999). Clear error can be found in an agency decision " 'only if the error is so clear as to deprive the agency's decision of a rational basis.' *Wawszkiewicz v. Dep't of Transportation,* 670 F.2d 296, 301 (D.C.Cir.1981) (internal quotation omitted)." *Inova Alexandria Hospital v. Shalala,* 244 F.3d 342, 351 (4th Cir.2001).

When it comes to particular line-drawing decisions made in the course of setting policy, an agency "is not required to identify the optimal threshold with pinpoint precision. It is only required to identify the standard and explain its relationship to the underlying regulatory concerns." *WorldCom, Inc. v. F.C.C.,* 238 F.3d 449, 461–62 (D.C.Cir.2001). *See Sinclair Broadcast Group, Inc. v. F.C.C.,* 284 F.3d 148, 159 (D.C.Cir.2002) ("Where issues involve 'elusive' and 'not easily defined' areas … [judicial] review is considerably more deferential, according broad leeway to the Commission's line-drawing determinations.").

■ The decision by ATF to send demand letters to dealers that had ten or more crime guns with a "time to crime" of three years or less traced to them in a calendar year was not arbitrary and capricious. As the Administrative Record amply shows, ATF in the instant case carefully screened the nationwide pool of FFLs to identify those few for whom issuance of the demand letter would yield the greatest law enforcement benefit. Similarly, ATF's conclusion that Plaintiff crossed the threshold for issuance of the demand letter under the applicable criteria is well supported by the Administrative Record. The record provided to this Court amply supports the conclusion that ATF reached reasonable conclusions in this regard, basing its decision-making on entirely appropriate factors. Especially in light of the degree of deference due the agency here [12], Plaintiff's argument that ATF acted arbitrarily and capriciously is wholly without merit.

### CONCLUSION

For the above stated reasons, Defendant's motion for summary judgment is GRANTED. Accordingly the Court ENTERS SUMMARY JUDGMENT in favor of the Defendant.

The Clerk is REQUESTED to send a copy of this Order to all counsel of record.

It is so ORDERED.

---

12. In the last major gun rights litigation to reach the Fourth Circuit that Court held that ATF in the administration of the Gun Control Act enjoys the "deference generally due an agency charged by Congress with implementing its directives". *National Rifle Ass'n v. Brady,* 914 F.2d 475, 479 (4th Cir.1990).