IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
No. 97-50047

GORE, INC. d/b/a PURE MILK CO.,

                    Plaintiff-Appellant,

    v.

DAN GLICKMAN, as Secretary of Agriculture,
United States Department of Agriculture,

                    Defendant-Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas
_____
April 2, 1998

Before KING and JONES, Circuit Judges, and WERLEIN,[*]
District Judge.

WERLEIN, District Judge:

     The sole issue in this appeal is whether Plaintiff-Appellant

Gore, Inc. is entitled to prejudgment interest on a refund it

recovered in Gore, Inc. v. Espy, 87 F.3d 767 (5th Cir. 1997)

("Gore I").  In "Gore I" this Court held that Gore was entitled

to recover from the milk producer-settlement fund the sum of

$366,772.28 in payments that Gore had made into that fund

pursuant to an erroneous determination made by the Secretary of

Agriculture.  We now hold that Gore is also entitled to recover

from the producer-settlement fund prejudgment interest on those

_____

        [*]     District Judge of the Southern District of Texas,
sitting by designation.

payments, and we therefore REVERSE the judgment of the district court that denied prejudgment interest.

Background

The background of this lawsuit, and various policies underlying the Agriculture Marketing Agreement Act of 1937[1] ("AMAA"), are set forth in "Gore I." The details may be found there of how Gore paid $366,772.38 into the producer-settlement fund in 1990-91, and then successively sought -- as required by law -- administrative review by the Secretary of Agriculture, which review was conducted and decided by an administrative law judge, further review and decision by the Secretary's chief judicial officer, and finally judicial review in the courts. Not until this Court's decision in July, 1996, which held that the Secretary's determination under 7 C.F.R. § 1126.4 was arbitrary, capricious, and plainly inconsistent with the text of the regulation, was Gore's position finally vindicated. Thereupon, this Court rendered judgment that Gore recover from the producer-settlement fund a refund of the full sum, and remanded the case for appropriate disposition.

The district court appropriately entered judgment in Gore's favor for the principal sum of $366,772.38, on November 7, 1996, but later denied Gore's motion to amend the judgment to add prejudgment interest on the refund, which by then had been withheld by the producer-settlement fund for approximately six

---

[1] 7 U.S.C. § 601 *et seq.* (1980 & Supp. 1997).

2

years.  Gore now appeals from the judgment of the district court that denied prejudgment interest.

## Analysis

The availability of prejudgment interest under the AMAA is a question of law, which is reviewed de novo. <u>Carpenters Dist. Council of New Orleans & Vicinity v. Dillard Dep't Stores</u>, 15 F.3d 1275, 1281 (5th Cir. 1994), *cert. denied*, 513 U.S. 1126, 115 S. Ct. 533 (1995) ("Questions of law are subject to de novo review while findings of fact will be disturbed only if we find that they are clearly erroneous.").

The AMAA does not expressly provide for or prohibit an award of prejudgment interest in a refund case.  Likewise, the regulations of the Department of Agriculture promulgated under the AMAA also are silent on the subject.  It is provided, however, that "[a]ny monies found to be due a handler from the market administrator shall be paid promptly to such handler . . . ."  7 C.F.R. § 1126.77 (1997).[2]

---

[2]    The "market administrator" is selected by the Secretary, and heads the agency for the administration of a federal milk marketing order.  7 C.F.R. § 1000.3 (1997).  The nation is divided into more than 40 marketing areas, and the Secretary issues numerous marketing orders (a few of which apply to more than one marketing area).  7 U.S.C. § 608c(5) (Supp. 1997).  This case arises from events in the Texas marketing area, which geographically consists of most of the State of Texas. *See* 7 C.F.R. § 1126.2 (1997).

The market administrator for the Texas marketing area is required to establish and maintain "a separate fund known as the `producer-settlement fund,' into which he shall deposit the payments made by handlers . . . ."  7 C.F.R. § 1126.70 (1997).  It is into this specific producer-settlement fund for the Texas

In a variety of situations the United States Supreme Court has provided the principles for determining whether prejudgment interest should be awarded when a specific statute is silent on the subject.  In Rodgers v. United States, 332 U.S. 371, 373, 68 S. Ct. 5, 7 (1947), the Court put it this way:

> [T]he failure to mention interest in statutes which create obligations has not been interpreted by this Court as manifesting an unequivocal congressional purpose that the obligation shall not bear interest. Billings v. United States, 232 U.S. 261, 284-288, 34 S.Ct. 421, 425-427, 58 L.Ed. 596.  For in the absence of an unequivocal prohibition of interest on such obligations, this Court has fashioned rules which granted or denied interest on particular statutory obligations by an appraisal of the congressional purpose in imposing them and in the light of general principles deemed relevant by the Court.

In City of Milwaukee v. Cement Div., Nat'l Gypsum Co., 515 U.S. 189, 194, 115 S. Ct. 2091, 2095 (1995), a unanimous Court (J. Breyer not participating) stated:

> Although Congress has enacted a statute governing the award of post-judgment interest in federal court litigation, see 28 U.S.C. § 1961, there is no comparable legislation regarding prejudgment interest. Far from indicating a legislative determination that prejudgment interest should not be awarded, however, the absence of a statute merely indicates that the question is governed by traditional judge-made principles.

---

marketing area that the market administrator was required to deposit the payments erroneously ordered to be paid during 1990-91.

*See also* <u>Monessen Southwestern Ry. Co. v. Morgan</u>, 486 U.S. 330, 336-337, 108 S. Ct. 1837, 1842-43 (1988); <u>West Virginia v. United States</u>, 479 U.S. 305, 308-313, 107 S. Ct. 702, 705-707 (1987).

This Court also has held that in the absence of a specific statute authorizing prejudgment interest, the courts look to whether "an award of such interest would further the congressional policies" of the specific statute at issue. <u>Guidry v. Booker Drilling Co.</u>, 901 F.2d 485, 488 (5th Cir. 1990); <u>Hansen v. Continental Ins. Co.</u>, 940 F.2d 971, 984 n.11 (5th Cir. 1991) ("[A]n award of prejudgment interest under ERISA furthers the purposes of that statute by encouraging plan providers to settle disputes quickly and fairly, thereby avoiding the expense and difficulty of federal litigation."); *see also, e.g.*, <u>West Virginia v. United States</u>, 479 U.S. at 310-11, 107 S. Ct. at 706 (looking to the purpose behind the Disaster Relief Act to determine if prejudgment interest is recoverable); <u>Poleto v. Consolidated Rail Corp.</u>, 826 F.2d 1270, 1274-75 (3d Cir. 1987) (looking to purpose of FELA and history of cases interpreting it to determine whether prejudgment interest is available).

In examining the purpose of a statute and applying "traditional judge made principles," the case law reflects that those principles include "the relative equities between the beneficiaries of the obligation and those upon whom it has been imposed", <u>Rodgers</u>, 332 U.S. at 373, 68 S. Ct. at 7; fairness, <u>Blau v. Lehman</u>, 368 U.S. 403, 414, 82 S. Ct. 451, 457 (1962); <u>Hansen</u>, 940 F.2d at 984 n.11; <u>McLaughlin v. Lindeman</u>, 853 F.2d

5

1307, 1306 (5th Cir. 1988); ensuring full compensation, <u>City of Milwaukee</u>, 515 U.S. at 194, 115 S. Ct. at 2095; <u>West Virginia v. United States</u>, 479 U.S. at 310 n.2, 107 S. Ct. at 706; expeditious settlement, <u>Hansen</u>, 940 F.2d at 984 n.11; and the need to conform to historical legislative and judicial precedent. <u>Monessen</u>, 486 U.S. at 338-339, 108 S. Ct. at 1844.

Turning to the instant legislation, it is well recognized that Congress enacted the AMAA to regulate the milk industry in response to "intense competition in the production of fluid milk products." <u>Block v. Community Nutrition Inst.</u>, 467 U.S. 340, 341, 104 S. Ct. 2450, 2452 (1984). To curb destabilizing competition in the industry, Congress gave to the Secretary of Agriculture the authority to issue milk market orders that established "minimum prices that handlers (those who process dairy products) must pay to producers (dairy farmers) for their milk products." <u>Id</u>.

> The "essential purpose [of this milk market order scheme is] to raise producer prices," S.Rep. No. 1011, 74th Cong., 1st Sess., 3 (1935), and thereby to ensure that the benefits and burdens of the milk market are fairly and proportionately shared by all dairy farmers.

<u>Id.</u>

In achieving that overarching purpose of the AMAA, at least two related objectives -- pertinent to this case -- are evident from the legislative scheme. First, and of paramount importance, is the requirement that handlers purchasing milk products promptly remit to the producer-settlement fund the amounts

6

assessed by the Secretary in order that the producers can be promptly paid for their milk products.  Second, and as something of a corollary to the first objective, the Act reflects a scheme intended to achieve fairness also for the handlers.

Several provisions in the AMAA serve to compel prompt payments by handlers.  To begin with, federal district courts are given jurisdiction

> specifically to enforce, and to prevent and restrain any person from violating any order, regulation, or agreement, heretofore or hereafter made or issued pursuant to this chapter. . . .

7 U.S.C. § 608a(6) (1980).  In a landmark case, the Supreme Court held that the Secretary of Agriculture was entitled under § 608a(6) to obtain a mandatory injunction commanding a handler to comply with a milk order by paying into the producer-settlement fund the sums alleged by the Secretary to be due to the fund notwithstanding the handler's contention that the sum demanded had been based upon faulty inspection of the handler's accounts and improper tests of the handler's milk and milk products.  United States v. Ruzicka, 329 U.S. 287, 67 S. Ct. 207 (1946).  The Supreme Court in Ruzicka acknowledged that even though errors are inevitable, which may call for payments by handlers into the producer-settlement fund, "[t]he reliance of the industry upon that Fund makes prompt payments into it imperative."  Id. at 289, 67 S. Ct. at 208.  Moreover, because the handler in Ruzicka had not availed himself of the

7

administrative review process provided by § 608c(15)(A), he was precluded from seeking judicial relief from the Secretary's order in defending the case that had been filed by the Secretary to enforce the order. <u>Id.</u> The Court emphasized the congressional purpose underlying the disparate authority conferred upon the Secretary to obtain judicial enforcement of his possibly erroneous order, while denying to the handler the right to seek judicial protection from an invalid order until he had first exhausted his administrative remedies:

> In large measure, the success of this scheme revolves around a "producers" fund which is solvent and to which all contribute in accordance with a formula equitably determined and of uniform applicability. Failure by handlers to meet their obligations promptly would threaten the whole scheme. Even temporary defaults by some handlers may work unfairness to others, encourage wider non-compliance, and engender those subtle forces of doubt and distrust which so readily dislocate delicate economic arrangements. To make the vitality of the whole arrangement depend on the contingencies and inevitable delays of litigation, no matter how alertly pursued, is not a result to be attributed to Congress unless support for it is much more manifest than we here find. That Congress avoided such hazards for its policy is persuasively indicated by the procedure it devised for the careful administrative and judicial consideration of a handler's grievance. It thereby safeguarded individual as well as collective interests.

<u>Id.</u> at 293, 67 S. Ct. at 210.

In addition to providing the Secretary with preferred access to the courts for enforcement of his orders, the statute includes other incentives, both criminal and civil, to assure prompt payments by handlers into the producer-settlement fund. Title 7 U.S.C. § 608c(14)(A) provides that any handler who violates any

8

provision of a milk order issued under § 608c shall, on conviction, be fined not less than $50 or more than $5,000 for each violation, and each day during which such violation continues is deemed a separate violation.  Similarly, § 608c(14)(B) imposes civil penalties not exceeding $1,000 for each such violation, and each day the violation continues is deemed a separate violation.[3]  The Secretary also has adopted a regulation to require a handler to pay interest at the rate of three-fourths of one percent per month on unpaid obligations to the Texas area producer-settlement fund.  7 C.F.R. § 1126.78 (1997).  Again, the economic compulsion reflected in the statutory and regulatory scheme serves that important policy of the Act to make certain that milk payments are promptly made in order that the producers may be regularly paid in accordance with the overriding statutory purpose.

Another objective of the AMAA, however, is that handlers be treated with fairness.  Thus, 7 U.S.C. § 608c(15) provides that handlers have a right to administrative review of orders that they challenge and, after exhausting administrative review, they may have access to the federal judiciary to determine whether the Secretary's ruling was made in accordance with law.[4]  It is clear

---

[3]     There are exceptions in both subsections (A) and (B) for administrative review petitions filed with the Secretary in good faith and not for delay to challenge the Secretary's orders.

[4]     To challenge an order of the Secretary, a handler must file a verified petition with the Secretary. 7 C.F.R. § 900.52 (1997).  A hearing is then held before an administrative law judge, who issues a written decision. 7 C.F.R. §§ 900.60, 900.64

that a handler who desires to challenge a payment order must first exhaust his administrative remedies.  Id.; Alabama Dairy Products Ass'n, Inc. v. Yeutter, 980 F.2d 1421, 1423-24 (11th Cir. 1993).  In Ruzicka the Supreme Court viewed this procedure as providing to

> an aggrieved handler an appropriate opportunity for the correction of errors or abuses by the agency charged with the intricate business of milk control.  In addition, if the Secretary fails to make amends called for by law the handler may challenge the legality of the  Secretary's ruling in court.  Handlers are thus assured opportunity to establish claims of grievances while steps for the protection of the industry as a whole may go forward.

Id. at 292, 67 S. Ct. at 209.  The Court specifically found that the provisions of the AMAA "taken in their entirety"  constitute "a means for attaining the purposes of the Act while at the same time protecting adequately the interests of individual handlers." Id.

With these well-recognized policies and objectives of the AMAA in mind, we turn to the specific question of whether an award of prejudgment interest on a refund to a handler would "further the congressional policies" of the Act.  We conclude that it would.  Prejudgment interest, like any other interest, is to compensate one for the time value of money.  Brabson v. United

---

(1997).  Thereafter, the administrative law judge's decision can be appealed to the chief judicial officer, who issues the Secretary's final decision on the issue. 7 C.F.R. §§ 900.65, 900.66 (1997).  Only after those steps are taken may a handler seek judicial review of the Secretary's decision in federal district court.  7 U.S.C. § 608(c)(15)(B) (1980).

10

States, 73 F.3d 1040, 1044 (10th Cir.), *cert. denied*, _____ U.S. _____, 117 S. Ct. 607 (1996) (prejudgment interest is designed to "compensate the injured victim for the lost time value of money"); Motion Picture Ass'n of Am., Inc. v. Oman, 969 F.2d 1154, 1157 (D.C. Cir. 1992) ("[I]nterest compensates for the time value of money, and thus is often necessary for full compensation."); In the Matter of Continental Ill. Secs. Regulation, 962 F.2d 566, 571 (7th Cir. 1992)("The cost of delay in receiving money to which one is entitled is the loss of the time value of money, and interest is the standard form of compensation for that loss.").

It plainly is not an objective of the Act to require handlers to pay into the fund monies that they do not actually owe, nor to provide to producers windfalls to which they are not entitled. To deny to handlers the time value of money that the Secretary has wrongfully ordered them to pay, and from which the producer-settlement fund has benefitted during the time that the funds were withheld, would exacerbate the wrong and subvert the companion objectives described above, namely, to assure prompt compliance by handlers with the Secretary's payment orders, even before administrative and judicial review, while at the same time treating the handlers with fairness.

As for the first of these objectives, if a handler may recover prejudgment interest on a payment that he is wrongfully ordered to pay, then the economic incentive upon the handler promptly to make that payment is materially increased. In other

words, the handler's alternatives of withholding the contested payment and risking liability for substantial interest and penalties if the contest fails, or paying the contested amount in confidence of receiving prejudgment interest on the refund if the contest succeeds -- coupled with no additional liability if the contest fails -- additionally discourages a handler from choosing not to comply even with contested orders to make payments into the fund. This incremental financial pressure upon the handler to pay into the fund an amount that he contests thereby furthers the congressional policies of the Act and is in full harmony with the legislative scheme.

As for the corollary objective to treat with fairness the handlers, the statute's administrative review procedure, 7 U.S.C. § 608c(15), authorizes handlers to petition the Secretary for agency review of the Secretary's orders and thereby obtain relief from obligations that are not in accordance with law. The right of the handler ultimately to obtain judicial review is a reinforcement of this statutory policy of fairness toward the handlers. Administrative review of agency orders, moreover, is generally intended to resolve disputes more quickly than may be possible through judicial proceedings. The principle favoring expeditious resolution of handler disputes is reflected in the regulation that "[a]ny monies found to be due to a handler from the market administrator shall be paid promptly to such handler . . . ." 7 C.F.R. § 1126.77 (1997). Potential liability for prejudgment interest would further encourage expeditious and

12

careful administrative review of contested orders and prompt payments of refunds that are due.  The free use of money, that is, the right to order that payments be made into the fund without risk of consequences, even including, as here, from an order adjudged to have been based on an interpretation that was "arbitrary, capricious, and plainly inconsistent with the text of the regulation," "Gore I" at 769, is a disincentive to prompt and efficient administrative review.  Conversely, the fund's potential liability for prejudgment interest would tend to impel the Secretary to conduct timely and objective reviews of his contested orders.  This also advances the congressional purpose that handlers be treated with fairness.

In the instant case years elapsed between Gore's making of the required payments into the fund in 1990-91 and the conclusion of the administrative and judicial proceedings in Gore's favor in late 1996.  To deny a handler prejudgment interest on money that he did not owe in accordance with law but was required to pay by reason of an arbitrary, capricious, and erroneous order of the Secretary, which Order deprived the handler of his money for a number of years, would mock the statutory objective of treating handlers with fairness.

Interestingly, the Secretary has adopted a regulation to collect interest on delinquent amounts not paid into the producer-settlement fund by the handler.  7 C.F.R. § 1126.78 (1997).  This, in effect, is prejudgment interest.  The Secretary's implicit recognition of the time value of money if

13

the money is owed to the fund, but disregard of that principle if the fund is obligated to refund the money to the handler, reflects a serious inequity.[5]  Equitable considerations are also considered in determining whether prejudgment interest should be awarded.  Rodgers, 332 U.S. at 373, 68 S. Ct. at 7.

We are also guided by the precedents of other courts.  In Abbotts Dairies v. Butz, 584 F.2d 12, 21 & n.18 (3d Cir. 1978), a milk handler's appeal was reversed in his favor with instructions that the producer-settlement fund would "serve as the source for the refund" and that the "district judge must also consider the issue whether interest is recoverable and, if so, its amount." Other reported decisions have almost uniformly awarded prejudgment interest to milk handlers on amounts ordered to be refunded from producer-settlement funds.  *See* Sani-Dairy v. Yeutter, 935 F. Supp. 608, 610 (W.D. Pa. 1995), *aff'd*, 91 F.3d 15 (3d Cir. 1996); Kinnett Dairies, Inc. v. Madigen, 796 F. Supp. 515, 516 (M.D. Ga. 1992); Kreider Dairy Farms, Inc. v. Glickman, 1996 WL 472414, at *10 (E.D. Pa. Aug. 15, 1996); Cumberland Farms, Inc. v. Lyng, 1989 WL 85062, at *3 (D.N.J. July 18,

---

[5]     This should not be taken to imply that the *rate* of prejudgment interest for which the producer-settlement fund is held liable must be equal to the rate that the Secretary imposes upon handlers for delinquent accounts.  The latter rate under the Texas order is presently three-fourths of one percent per month. It is unlikely that prejudgment interest on a refund owed to the handler would exceed the postjudgment interest rate under 28 U.S.C. § 1961, which, for example, is currently only 5.407% per annum.  In any event, when prejudgment interest is due, it is left to the sound discretion of the district court to set the amount.  United States v. Central Gulf Lines, Inc., 974 F.2d 621, 630-31 (5th Cir. 1992), *cert. denied*, 507 U.S. 917, 113 S. Ct. 1274 (1993); Hansen, 940 F.2d at 984-985.

14

1989).[6]  Moreover, notwithstanding the uniform precedents awarding payments of prejudgment interest to milk handlers receiving refunds from producer-settlement funds, Congress has taken no action to bar this result.  Congress's "failure to disturb a consistent judicial interpretation of a statute may provide some indication that 'Congress at least acquiesces in, and apparently affirms, that [interpretation]'".  Monessen, 468 U.S. at 338, 108 S. Ct. at 1844 (quoting Cannon v. University of Chicago, 441 U.S. 677, 99 S. Ct. 1946 (1979)).

Finally, the Secretary argues that an award of prejudgment interest, in the absence of specific statutory authority, would infringe on the sovereignty of the United States.  In oral arguments the Secretary relied on Wileman Bros. & Elliott, Inc. v. Espy, 58 F.3d 1367, 1385 (9th Cir. 1995), *rev'd sub nom on other grounds* Glickman v. Wileman Bros. & Elliott, ___ U.S. ___, 117 S. Ct. 2130 (1997).  In Wileman Bros., the Ninth Circuit had held that the Secretary's nectarine and peach marketing orders imposing upon handlers assessments to be used for generic advertising violated the handlers' First Amendment rights.  The court of appeals held that the handlers' refund claims for the

---

[6]    The only arguable exception to this line of cases is Lawson Milk Co. v. Freeman, 358 F.2d 647 (6th Cir. 1966), in which the court applied a specific regulation contained in the milk marketing order for the Cleveland marketing area, and held that the refund paid to the handler was not an "overdue account" and did not have a "due date" when the Secretary paid the refund, and therefore interest was not owed on the account under the specific language of the regulation.  The Texas marketing area order does not contain such a provision applicable to refunds paid by the Secretary.

15

dollars spent on generic advertising were not barred by sovereign immunity because they were equitable claims for the return of improper assessments. The court of appeals also held that the handlers' additional claims for money damages from the United States based upon the alleged violation of their First Amendment rights, distinct from the refund claims, were barred unless the United States waived its sovereign immunity. Applying that holding to the instant case, the Secretary argues that an award of prejudgment interest would be tantamount to a judgment for money damages against the United States in violation of sovereign immunity.

The Supreme Court reversed the Ninth Circuit's decision in Wilemon Bros. on the First Amendment liability question, and thus the circuit court's discussion of the relief to which the handlers were or were not entitled was rendered moot. Nonetheless, a reading of the Ninth Circuit's opinion reflects no consideration, no discussion, and no holding on whether the handlers were entitled to recover from the fund prejudgment interest on a properly awarded refund. It is true, of course, that "[i]n the absence of express congressional consent to the award of interest separate from a general waiver of immunity to suit, the United States is immune from an interest award." Library of Congress v. Shaw, 478 U.S. 310, 314, 106 S. Ct. 2957, 2961 (1986). This proposition of law would govern the parties' dispute over prejudgment interest if the case were indeed a claim against the United States, and if an award of prejudgment

interest were to be paid from the "public treasury or domain, or interfere with public administration."  Bank One, Texas, N.A. v. Taylor, 970 F.2d 16, 33 (5th Cir. 1992), *cert. denied*, 508 U.S. 906, 113 S. Ct. 2331 (1993) (citations omitted).  But unlike Wileman Bros., Gore sought no money damages against the United States.  The parties agree, in fact, that the producer-settlement fund for the Texas marketing area, from which an award of prejudgment interest would be paid, contains no federal funds.[7] The fund contains only payments made by milk handlers together with whatever earnings the fund receives from the market administrator's prudent management.  7 C.F.R. § 1126.70 (1997). Moreover, the Secretary of Agriculture, to whom Congress has delegated responsibility for administration of the Act, and the market administrator, who is selected by the Secretary, 7 C.F.R. § 1000.3 (1997), are acting here simply as administrators of the Act and as managers of the producer-settlement fund.  A judgment for prejudgment interest in this case, therefore, will impact only the milk producer-settlement fund into which Gore's payments were deposited in 1990-91 pursuant to the Secretary's erroneous order.  The judgment will not operate against the Treasury of the United States, and will not infringe on the sovereign immunity of the United States.

---

[7]   Appellee's counsel at oral argument conceded that he had no reason to dispute that an award of prejudgment interest would be paid from the producer-settlement fund.

The judgment appealed is therefore REVERSED, and the matter is REMANDED to the district court to amend the judgment by adding an appropriate award of prejudgment interest.