**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**February 18, 2005**

**Charles R. Fulbruge III**
Clerk

In the United States Court of Appeals

For the Fifth Circuit

_____

No. 03-31136

_____

CHAD ANTHONY CHAMBERLAIN,
By and Through His Curator,
Wilmer Joseph Chamberlain and His Under-Curatrix,
Beverly LeBlanc Chamberlain;
WILMER JOSEPH CHAMBERLAIN;
BEVERLY LEBLANC CHAMBERLAIN,

                              Plaintiffs - Appellants,

                    versus

UNITED STATES OF AMERICA,

                              Defendant - Appellee.

_____

Appeals from the United States District Court
For the Eastern District of Louisiana

_____

Before KING, Chief Judge, HIGGINBOTHAM, and DAVIS, Circuit
Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

     Chad Chamberlain, by and through his parents Wilmer and
Beverly Chamberlain,[1] brought suit against the United States
seeking recovery of over one million dollars in income tax assessed
against prejudgment interest awarded in a personal injury lawsuit.
The Chamberlains argued that prejudgment interest recovered in a
personal injury suit is excluded from taxation by section 104(a)(2)

_____

     [1] Wilmer Chamberlain is Chad Chamberlain's curator, and Beverly Chamberlain
is his under-curatrix.

of the Internal Revenue Code ("section 104(a)(2)"). The district court rejected their argument, finding that prejudgment interest received in a personal injury suit is not received "on account of" the personal injury. We affirm.

I

Chad Chamberlain was severely injured while swimming due to the negligence of the State of Louisiana. A lawsuit against the State produced total damages of $9,253,551.58, of which $3,791,741.53 was attributable to prejudgment interest. The IRS assessed income tax against the prejudgment interest component of the award, and the Chamberlains paid the required amount under protest.[2] The Chamberlains sought a refund, and received a certified letter from the IRS informing them that their claims had been fully disallowed. They timely filed suit in the U.S. District Court for the Eastern District of Louisiana seeking recovery of the contested amount.

The district court granted summary judgment in favor of the United States. The court found that federal law controls the tax treatment of prejudgment interest awarded under Louisiana law.[3] Applying federal law, the district court found that the Chamberlains' prejudgment interest award was taxable as gross

---

[2] The tax was paid as part of the Chamberlains' 1994 taxable income. The taxable interest included $3,513,641.53 attributable to the award to Chad Chamberlain, and $278,100.00 attributable to the award to Wilmer and Beverly Chamberlain.

[3] *Chamberlain v. United States*, 286 F. Supp. 2d 764, 766 (E.D. La. 2003).

2

income, and was not excluded from taxation under section 104(a)(2).

In making this determination, the court applied the two-part test articulated by the Supreme Court for determining whether an amount is excluded under section 104(a)(2).  Under this test, the taxpayer must 1) demonstrate that the underlying cause of action giving rise to the recovery is based upon a tort or tort type rights; and 2) show that the damages were received on account of personal injuries or sickness.[4]  The district court found that the Chamberlains satisfied the first part of the test, but faltered on the second.  Citing to cases decided by the First, Third and Tenth Circuits addressing the applicability of section 104(a)(2) to prejudgment interest, the district court found that prejudgment interest was paid to compensate injured parties for their lost time value of money, and not their personal injuries.[5]  In addition, the district court deemed it irrelevant that, unlike some common law jurisdictions, prejudgment interest is classified as part of a plaintiff's reparation damages under Louisiana Civil Law:

> While the Court acknowledges the unique legal history of Louisiana and the important contributions of the scholars cited by the plaintiffs, it does not change the treatment of such interest under the federal tax laws.  Prejudgment interest may be considered part of damages under Louisiana law, but, nonetheless, it is not received "on account of" personal injuries.  Instead, it is received on account of the time delay.  Therefore, prejudgment

---

[4] *Comm'r v. Schleier*, 515 U.S. 323, 336-37 (1995).

[5] 286 F. Supp. 2d at 767.

3

interest is taxable under the Federal Tax Code.[6]

The Chamberlains filed a timely notice of appeal.

## II

On appeal, the Chamberlains argue that the district court erred in finding that prejudgment interest awarded under Louisiana law in a personal injury suit is taxable.[7] We review the district court's decision *de novo*.[8]

The Chamberlains' argument presents a question of first impression for our court. Accordingly, we begin our analysis with a review of the pertinent provisions of the Internal Revenue Code.

## A

In order for a specific amount to be subject to federal income tax, it must first come within the Internal Revenue Code's definition of "gross income." Section 61(a) of the Code broadly defines gross income as "all income from whatever source derived."[9] The Supreme Court has repeatedly emphasized the sweeping scope of

---

[6] *Id.*

[7] The Chamberlains also contend that, by finding their prejudgment interest award to be taxable, the district court improperly afforded retroactive application to a "new" rule of law. This argument was not raised before the district court and is therefore waived. *See Brown v. Ames*, 201 F.3d 654, 663 (5th Cir. 2000) ("To avoid being waived, an argument 'must be raised to such a degree that the trial court may rule on it.'" (quoting *In re Fairchild Aircraft Corp.*, 6 F.3d 1119, 1128 (5th Cir. 1993))).

[8] *See United States v. Lowe*, 118 F.3d 399, 400 (5th Cir. 1997) (noting that a district court's grant of summary judgment based upon its interpretation of a federal statute is reviewed *de novo* (citing *Estate of Bonner v. United States*, 84 F.3d 196, 197 (5th Cir. 1996))).

[9] I.R.C. § 61(a).

this definition, holding that Congress intended section 61(a), as well as its statutory predecessors, to exert the "full measure of its taxing power."[10]  In contrast, the Court has held that exclusions from gross income must be construed narrowly.[11]

The parties do not dispute, and we have no difficulty finding, that prejudgment interest awarded under Louisiana law in a personal injury suit constitutes gross income, and is therefore taxable unless it comes within an exclusion.[12]  The Chamberlains argue that their prejudgment interest award is excluded from tax under section 104(a)(2) of the Code.

As in effect for the 1994 tax year, section 104(a)(2) provides that gross income does not include "the amount of any damages received . . . *on account of* personal injuries or sickness."[13]  The words "on account of" do not readily admit of a precise and unambiguous meaning,[14] and neither the Code nor the relevant

---

[10] *Helvering v. Clifford*, 309 U.S. 331, 334 (1940); *see also Comm'r v. Glenshaw Glass Co.*, 348 U.S. 426, 429 (1955).

[11] *See Schleier*, 515 U.S. at 328 ("We have . . . emphasized the corollary to § 61(a)'s broad construction, namely, the default rule of statutory interpretation that exclusions from income must be narrowly construed." (internal quotation marks and citation omitted)); *see also United States v. Centennial Sav. Bank FSB*, 499 U.S. 573, 583 (1991) (exclusions from income are to be construed narrowly); *Comm'r v. Jacobson*, 336 U.S. 28, 49 (1949) (same).

[12] *See Wesson v. United States*, 48 F.3d 894, 898 (5th Cir. 1995) ("Accessions to wealth are generally presumed to be gross income unless the taxpayer can show that the accession falls within a specific exclusion.").

[13] I.R.C. § 104(a)(2) (1988 ed. and Supp. V) (amended 1996) (emphasis added).

[14] We have previously commented upon the ambiguous nature of section 104(a)(2):

5

Treasury Regulations attempt to define them.[15]  Thus, we must turn to Supreme Court precedent for guidance.

The Supreme Court has decided three seminal cases interpreting section 104(a)(2).  Although these cases do not consider the question of whether prejudgment interest is excluded from taxation, they provide the basic legal framework within which this question must be addressed.

In the first of these cases, *United States v. Burke*,[16] the Court held that a backpay award received in settlement of a claim brought under Title VII of the Civil Rights Act of 1964 was not excluded from gross income under section 104(a)(2).  The Court found that, in order for an award of damages to come within section 104(a)(2), it must redress a tort like personal injury.[17]  Noting that "[r]emedial principles . . . figure prominently in the

---

As the Ninth, Federal, and Fourth Circuits have noted, section 104(a)(2) is ambiguous, susceptible of at least two conflicting interpretations.  We agree.  Section 104(a)(2) could mean that all damages recovered in a personal injury suit are excluded, or it could mean that only those damages that purport to compensate the plaintiff for the personal injury suffered are received on account of personal injury . . . ."

*Wesson*, 48 F.3d at 897.

[15] Treasury Regulation 1.104-1(c) provides that "[t]he term 'damages received (whether by suit or agreement)' means an amount received . . . through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution." Treas. Reg. § 1.104-1(c) (2004).  While this regulation clearly requires that damages excluded under section 104(a)(2) be received through a legal action grounded in tort, it does not define the words "on account of."

[16] 504 U.S. 229 (1992).

[17] *Id.* at 237.

definition and conceptualization of torts," the Court construed "damages" and "personal injury" broadly to encompass damages awarded to compensate plaintiffs for both physical and non-physical injuries.[18]   Applying these general principles to Title VII, the Court found that an award of backpay to compensate plaintiffs for wages properly due and taxable did not redress a tort like personal injury within the meaning of section 104(a)(2), and failed to compensate plaintiffs for "any of the other traditional harms associated with personal injury, such as pain and suffering, emotional distress, harm to reputation, or other consequential damages (*e.g.*, a ruined credit rating)."[19]

The Supreme Court extended this analysis in *Commissioner v. Schleier*,[20] holding that an award of backpay and liquidated damages received in settlement of a claim brought under the Age Discrimination in Employment Act of 1967 was not excluded under section 104(a)(2).   In reaching this conclusion, the Court announced two independent requirements that must be met for an amount to be excluded from taxation under section 104(a)(2): "[f]irst, the taxpayer must demonstrate that the underlying cause

---

[18] *Id.* at 234-37.  Congress amended section 104(a)(2) in 1996 to limit its application to amounts received for personal physical injuries or sickness. *See* Small Business Job Protection Act of 1996, Pub L. 104-188, § 1605(a), 110 Stat. 1838; *Forste v. Comm'r*, T.C. Memo 2003-103 ("Before Congress amended section 104(a)(2) in 1996 to limit the exclusion to amounts received for physical personal injuries, the U.S. Supreme Court interpreted section 104(a)(2) to encompass harms both tangible and intangible, both physical and nonphysical.").

[19] *Id.* at 239.

[20] 515 U.S. 323 (1995).

of action giving rise to the recovery is based upon tort or tort type rights; and second, the taxpayer must show that the damages were received *on account of* personal injuries or sickness."[21] The Court emphasized the independent nature of these two inquiries, noting that "[t]he regulatory requirement that the amount be received in a tort type action is not a substitute for the statutory requirement that the amount be received 'on account of personal injuries or sickness'; it is an additional requirement."[22]

In *United States v. O'Gilvie*,[23] the Supreme Court applied this test and held that punitive damages received in connection with a wrongful death recovery were not excluded from taxation under section 104(a)(2). The Court found that the punitive damages in question satisfied the first prong of the test because they had been received in an "ordinary suit for personal injuries."[24] Moving to the second prong, the Court observed that punitive damages could be excluded from taxation under section 104(a)(2) only if they were received "on account of" the personal injuries. Noting that the "phrase 'on account of' does not unambiguously define itself," the Court proceeded to examine it.[25]

---

[21] *Id.* at 337 (internal quotation marks omitted) (emphasis added).

[22] *Id.* at 333.

[23] 519 U.S. 79 (1996).

[24] *Id.* at 82 (internal quotation marks omitted).

[25] *Id.*

The Court began its analysis by setting forth two competing interpretations of the phrase "on account of":

> On one linguistic interpretation of those words, that of petitioners, they require no more than a "but-for" connection between "any" damages and a lawsuit for personal injuries.  They would thereby bring virtually all personal injury lawsuit damages within the scope of the provision, since: "but for the personal injury, there would be no lawsuit, and but for the lawsuit, there would be no damages."  On the Government's alternative interpretation, however, those words impose a stronger causal connection, making the provision applicable only to those personal injury lawsuit damages that were awarded by reason of, or because of, the personal injuries.  To put the matter more specifically, they would make the section inapplicable to punitive damages, where those damages "'are not compensation for injury [but] [i]nstead . . . are private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence.'"[26]

The Court then adopted the Government's proposed interpretation, noting that it "gives the phrase 'on account of' a meaning more consistent with the dictionary definition."[27]  The Court also found this interpretation consistent with its holding in *Schleier* that liquidated damages received under the ADEA are not excluded from taxation under section 104(a)(2) because they are not "designed to compensate ADEA victims [but instead are] punitive in nature."[28]  The Court found the similarity between liquidated damages under the ADEA and punitive damages striking, observing that punitive damages

---

[26] *Id.* at 82-83 (quoting *Int'l Brotherhood of Elec. Workers v. Foust*, 442 U.S. 42, 48 (1979) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974) (footnote omitted))).

[27] *Id.* at 83.

[28] *Id.* at 84 (internal quotation marks and citations omitted).

constitute an element of damages designed not to compensate tort victims, but to punish tortfeasors.[29]

Turning to the history of section 104(a)(2) and the "tax-related purpose that the history reveals," the Court identified pronouncements made by all three branches of the federal government indicating that amounts received as restoration or replacement of capital should not be taxed.[30] Based on this history and the policy it reflected, the Court concluded that "there is no strong reason for trying to interpret the statute's language to reach beyond those damages that, making up for a loss, seek to make a victim whole, or, speaking very loosely, 'return the victim's personal or

---

[29] *Id.*

[30] Specifically, the Court cited to two of its cases addressing the tax implications of capital conversions, an opinion by the Attorney General, a Treasury Decision, and legislative materials. *See Doyle v. Mitchell Bros. Co.*, 247 U.S. 179, 185 (1918) ("'Income may be defined as the gain derived from capital, from labor, or from both combined.' Understanding the term in this natural and obvious sense, it cannot be said that a conversion of capital assets invariably produces income." (quoting *Stratton's Independence v. Howbert*, 231 U.S. 399, 415 (1913))); *S. Pac. Co. v. Lowe*, 247 U.S. 330, 335 (1918) ("We must reject in this case, as we have rejected in cases arising under the Corporation Excise Tax Act of 1909, the broad contention submitted in behalf of the government that all receipts – everything that comes in – are income within the proper definition of the term 'gross income,' and that the entire proceeds of the conversion of capital assets, in whatever form and under whatever circumstances accomplished, should be treated as gross income." (citations omitted)); 31 Op. Att'y. Gen. 304, 308 (1918) ("[T]he proceeds of an accident insurance policy are not 'gains or profits and income' . . . in a broad, natural sense the proceeds of the policy do but substitute, so far as they go, capital which is the source of future periodical income. They merely take the place of capital in human ability which was destroyed by the accident. They are therefore 'capital' as distinguished from 'income' receipts." ); T.D. 2747, 20 Treas. Dec. Int. Rev. 457 (1918) (noting that "upon similar principles . . . an amount received by an individual as the result of a suit or compromise for personal injuries sustained by him through accident is not income [that is] taxable . . . "); Revenue Act of 1918, ch. 18, § 213(b)(6), 40 Stat. 1066 (excluding from income "[a]mounts received, through accident or health insurance or under workmen's compensation acts, as compensation for personal injuries or sickness, plus the amount of any damages received whether by suit or agreement on account of such injuries or sickness").

10

financial capital.'"[31]

Finally, the Court queried why Congress might have wanted to exclude punitive damages from taxation, and found no satisfactory answer. The Court observed that punitive damages "are not a substitute for any normally untaxed personal (or financial) quality, good, or 'asset[,]' [and] do not compensate for any kind of loss."[32] In addition, the Court found that the "statute's language does not require, or strongly suggest, their exclusion from income."[33]

Taken together, *Burke*, *Schleier*, and *O'Gilvie* provide that, to be excluded from taxation under section 104(a)(2), an amount must be received in an action seeking recovery for tort or tort type rights, and must constitute damages received "on account of" personal injury. In addition, *O'Gilvie* indicates that, in order to constitute damages received "on account of" personal injury, an amount must be awarded "by reason of" or "because of" personal injury, and must compensate a victim for the loss of personal or financial capital.

---

[31] *O'Gilvie*, 519 U.S. at 86. The Court conceded that the exclusion for damages that substitute for lost wages goes beyond "what one might expect a purely tax-policy-related 'human capital' rationale to justify." *Id.* The Court concluded, however, that the statute's failure to separate damages compensating for lost wages from those compensating for lost human capital "does not change its original focus upon damages that restore a loss, that seek to make a victim whole, with a tax-equality objective providing an important part of, even if not the entirety of, the statute's rationale." *Id.*

[32] *Id.* at 86-87.

[33] *Id.* at 87.

We now turn to the question of whether prejudgment interest is excluded from taxation under section 104(a)(2). We begin by applying the test articulated in *Schleier*. The Chamberlains clearly meet the first prong of the *Schleier* test given that the underlying cause of action giving rise to their recovery of prejudgment interest was based upon tort type rights. Specifically, they sought damages for personal injuries suffered by their son due to the negligence of the State of Louisiana.

The more difficult question is whether, under the second prong, prejudgment interest is received "on account of" personal injury. Neither our court nor the Supreme Court has addressed this precise issue. However, three of our sister circuits have held that prejudgment interest is not received "on account of" personal injury, and therefore fails to qualify for the section 104(a)(2) exclusion. We examine the reasoning set forth in each of these cases in turn.

1

The Tenth Circuit was the first circuit court to address the taxability of prejudgment interest received in a personal injury suit, holding in *Brabson v. United States* that section 104(a)(2) does not exclude such interest from federal income tax.[34]  In

---

[34] 73 F.3d 1040 (10th Cir. 1996). *Brabson* was decided roughly ten months before *O'Gilvie*. Thus, the Tenth Circuit's discussion of Supreme Court precedent was necessarily limited to consideration of *Burke* and *Schleier*.

reaching this conclusion, the Tenth Circuit first observed that the United States Tax Court had held in *Kovacs v. Commissioner*[35] that prejudgment interest awarded in a personal injury suit was taxable. The Tenth Circuit then noted that "[t]he Tax Court's subsequent decisions, relying on *Kovacs*, consistently have held that prejudgment interest is taxable, regardless of how the state characterizes its prejudgment interest statute or whether the final disposition is judgment or settlement."[36]

The Tenth Circuit next applied the test articulated in *Schleier*, finding that prejudgment interest received in a personal injury tort suit satisfies the first prong of the test. The court then began its analysis of the second prong by looking to Colorado law to ascertain the nature of the prejudgment interest at issue. After examining relevant case law, the court concluded that, under Colorado law, prejudgment interest constitutes damages which "compensate the injured victim for the lost time value of money."[37]

The court then narrowed its inquiry to whether compensation

---

[35] 100 T.C. 124 (1993), *aff'd without published opinion*, 25 F.3d 1048 (6th Cir. 1994).

[36] *Brabson*, 73 F.3d at 1042-43 (citing *Burns v. Comm'r*, T.C. Memo 1994-284; *Robinson v. Comm'r*, 102 T.C. 116, 1994 WL 26303 (1994), *aff'd in part and rev'd in part*, 70 F.3d 34 (5th Cir. 1995); *Delaney v. Comm'r*, T.C. Memo 1995-378, *aff'd*, 99 F.3d 20 (1st Cir. 1996); *Forest v. Comm'r*, T.C. Memo 1995-377, *aff'd,* 104 F.3d 348 (1st Cir. 1996)). The Tax Court has continued this trend of affirming its holding in *Kovacs* following *Brabson*. *See, e.g.*, *Gregg v. Comm'r*, T.C. Memo 2001-245; *Quantum Co. Trust v. Comm'r*, T.C. Memo 2000-149; *Rozpad v. Comm'r*, T.C. Memo 1997-528, *aff'd*, 154 F.3d 1 (1st Cir. 1998); *Bagley v. Comm'r*, 105 T.C. 396, 1995 WL 730447 (1995), *aff'd*, 121 F.3d 393 (8th Cir. 1997).

[37] *Brabson*, 73 F.3d at 1044.

for lost time value of money is excludable under § 104(a)(2).[38]  To answer this query, the Tenth Circuit looked first to the language of section 104(a)(2), its legislative history, and the relevant Treasury Regulations all without definitive result.  The court then examined three factors that militated against the exclusion of prejudgment interest.  First, the court noted that prejudgment interest is not a traditional remedy for personal injury, and therefore was not a part of Congress' original understanding of damages awarded on account of personal injuries.[39]  Second, the court found that *Schleier* emphasized the necessity of a "direct link between the injury and the [excludable] remedial relief."[40] Noting that prejudgment interest is "compensation for the lost time value of money . . . caused by the delay in attaining judgment," the court found that "prejudgment interest is not linked to the injury in the same direct way as traditional tort remedies."[41] Third, the court found that the default rule requiring that exclusions to gross income be construed narrowly mandated a finding that prejudgment interest was taxable in the absence of clear

---

[38] *Id.*

[39] *Id.* at 1046 ("Prejudgment interest was rarely available under the common law, and never for personal injuries.  Thus prejudgment interest, when awarded at all, generally compensated for pecuniary harms, most often easily determinable contractual ones." (citations omitted)).

[40] *Id* at 1047.

[41] *Id.*

14

guidance to the contrary.[42]

The taxability of prejudgment interest was next considered by the First Circuit in *Rozpad v. Commissioner*.[43] Building upon the reasoning in *Brabson*, the First Circuit concluded that prejudgment interest received as part of a personal injury recovery awarded under Rhode Island law is neither "damages," nor awarded "on account of" personal injury. The court first found that the prejudgment interest at issue did not constitute "damages" within the meaning of section 104(a)(2) because, under Rhode Island law, prejudgment interest is available in all civil cases, and therefore constitutes an incident attached to the damage award after the fact to compensate plaintiffs for "a delay in payment."[44] Second, the court found that prejudgment interest is not received "on account of personal" injury because personal injury does not *cause* the delay in payment. Rather, "the injury causes *damages*, thus creating the fund on which interest for delay in payment is owed."[45] Finding no direct link between a personal injury and the award of prejudgment interest, the court concluded that "prejudgment interest is inextricably intertwined with the very delay that *severs the connection* between prejudgment interest and the

---

[42] *Id.*

[43] 154 F.3d 1 (1st Cir. 1998).

[44] *Id.* at 6.

[45] *Id.*

15

underlying personal injury."[46]

Finally, the taxability of "delay damages" awarded under Pennsylvania law was addressed by the Third Circuit in *Francisco v. United States*.[47]  The court began its analysis by observing that "[t]he principle underlying § 104(a)(2) is known as the 'human capital' rationale."[48]  The court found that this rationale limited the application of section 104(a)(2) to "those damages that, making up for a loss, seek to make a victim whole, or, speaking very loosely, 'return the victim's personal or financial capital.'"[49] The court then determined that "delay damages" received under Pennsylvania law are equivalent to prejudgment interest, awarded "to remedy the time value of [plaintiff's recovery] lost during the period preceding judgment."[50]

Turning to the application of section 104(a)(2) to delay damages, the court examined in detail the reasoning in *Brabson* and *Rozpad*.  The court then applied *Brabson* and *Rozpad*, finding first that prejudgment interest awards in personal injury lawsuits lacked

---

[46] *Id.* at 7 (emphasis added).  The First Circuit also recited as justification for its decision three "indicia" set forth in *Brabson*: (1) prejudgment interest is not a traditional remedy for personal injuries; (2) prejudgment interest was not typically available at common law in personal injury cases at the time the section 104(a)(2) exclusion was created, and (3) there is no "direct link" between personal injury and prejudgment interest.  *Id.* at 6-7.

[47] 267 F.3d 303 (2001).

[48] *Id.* at 307.

[49] *Id.* (quoting *O'Gilvie*, 519 U.S. at 86) (internal quotation marks omitted).

[50] *Id.* at 310.

16

"any basis in common law," and were not intended by Congress to be excluded from taxation under section 104(a)(2).[51] The court next found that prejudgment interest "serves to indemnify the plaintiff for the money he would have earned on his award if he had promptly received it[,]"[52] thereby serving to "compensate the plaintiff for the delay in payment of the principal."[53] As such, prejudgment interest fails to fit within the "human capital" rationale underlying section 104(a)(2). Specifically, the court found that prejudgment interest is not awarded on account of personal injury because it "compensate[s] for the additional economic harm – as opposed to the injury itself – caused by the deprivation over a period of time of the underlying remedy."[54] Finally, the court noted that prejudgment interest, although compensatory in nature, does not compensate plaintiffs for any of the traditional harms associated with personal injury. Rather, it compensates plaintiffs for an economic harm that is normally taxable, and that does not substitute for a normally untaxed quality, good or asset.[55]

2

---

[51] *Id.* at 315.

[52] *Id.* (internal quotation marks and citation omitted).

[53] *Id.* at 316.

[54] *Id.* at 315-16.

[55] *Id.* at 317 ("Because compensation for economic harm in the form of interest is usually taxable and thus is not a substitute for any normally untaxed personal (or financial) qualify, good, or asset, we see no reason why either the statutory text of § 104(a)(2) or its rationale would support exempting delay damages from income." (internal quotation marks and citation omitted)).

The Chamberlains urge us to dismiss *Brabson* and its progeny as a jurisprudential "leap in the dark." They argue that the clear language of section 104(a)(2) as interpreted by the Supreme Court mandates the exclusion of a broad range of compensatory damages, including prejudgment interest awarded to compensate parties for loss occurring "because of" personal injury. Relatedly, they contend that, under Louisiana law, prejudgment interest constitutes part of the reparation or compensatory damages which serve to "make whole" an injured party, thus bringing it squarely within the section 104(a)(2) exclusion. These arguments fail to persuade us to reject the considered opinions of our sister circuits. Several reasons inform this conclusion.

First, we agree with our sister circuits that prejudgment interest lacks the direct relationship to personal injury necessary to meet the second prong of the *Schleier* test as described by *O'Gilvie*. In *O'Gilvie*, the Supreme Court found that, in order to be excluded under section 104(a)(2), an amount of damages must have more than a "but-for" connection to personal injury; it must be awarded "by reason of" or "because of" the personal injury.[56] This observation points up the fact that damages are not excluded from taxation under section 104(a)(2) solely by virtue of having been awarded in a personal injury lawsuit. A closer relationship to the injury itself is required.

[56] *O'Gilvie*, 519 U.S. at 82-83.

This relationship is described in *O'Gilvie* as compensatory and restorative in nature. Namely, excluded damages are those that compensate an injured party for her personal injuries by restoring her "personal or financial capital."[57] In addition, this exclusion is motivated in part by a "tax-equality objective" whereby damages that substitute for otherwise untaxed personal qualities, goods or assets are excluded.[58] For example, an individual's physical health is, in itself, an untaxable human "asset." When this asset is wrongfully converted by a tortfeasor, damages paid to compensate an individual for this harm are exempt from taxation because they serve to replace otherwise untaxable "human capital."

Unlike damages paid to compensate an individual for the loss of normally untaxed human or financial capital, prejudgment interest compensates an individual for his lost time value of money.[59] Under Louisiana law, were a tortfeasor to pay compensatory damages immediately upon demand, prejudgment interest would not

---

[57] *Id.* at 86.

[58] *Id.* at 86-87.

[59] *See Virginia v. United States*, 479 U.S. 305, 310 n.2 (1987) ("Prejudgment interest serves to compensate for the *loss of use* of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress."); *Gore, Inc. v. Glickman*, 137 F.3d 863, 868 (5th Cir. 1998) ("Prejudgment interest, like any other interest, is to compensate one for the time value of money." (citing *Brabson*, 73 F.3d at 1044; *Motion Picture Ass'n of Am., Inc. v. Oman*, 969 F.2d 1154, 1157 (D.C. Cir. 1992); *In re Cont'l Ill. Sec. Litigation*, 962 F.2d 566, 571 (7th Cir. 1992)).

accrue.[60]  It is only when an injured party suffers a delay in payment in addition to a personal injury that he will be entitled to prejudgment interest.  Thus, prejudgment interest is more naturally associated with an injured party's opportunity cost for the lost use of funds than it is with his lost human or financial capital.  Furthermore, were an injured party who received payment of compensatory damages immediately upon demand to invest those funds and receive a fixed rate of return, the interest earned on those funds would be fully taxable.[61]  Although not completely analogous to interest earned through the voluntary investment of monies within one's possession, prejudgment interest serves the function of giving the injured party the benefit of the time value of a money award retained for a period of time by a tortfeasor.[62]

---

[60] *See* LA. REV. STAT. ANN. § 13:4203 (West 1991) ("Legal interest attaches from [the] date of judicial demand, on all judgments, sounding in damages, 'ex delicto', which may be rendered by any of the courts.").

[61] *See* I.R.C. § 61(a)(4) (West 2002) (specifically providing that "interest" is taxable as gross income); *Comm'r v. Glenshaw Glass Co.*, 348 U.S. 426, 430 (1955) (characterizing taxable income as, *inter alia*, "gain *derived from* capital, from labor, or from both combined." (quoting *Eisner v. Macomber*, 252 U.S. 189, 207 (1920) (emphasis added)); *United States v. Smith*, 890 F.2d 711, 715 (5th Cir. 1989) (stating that monies received as a return of invested capital are non-taxable); *Cagle v. Comm'r*, 539 F.2d 409, 413 (5th Cir. 1976) ("To the extent a partner's compensation was considered a return of his own capital, that partner received no taxable income."); *Durkee v. Comm'r*, 162 F.2d 184, 186 (6th Cir. 1947) ("It is settled that since profits from business are taxable, a sum received in settlement of litigation based upon a loss of profits is likewise taxable; but where the settlement represents damages for lost capital rather than for lost profits the money received is a return of capital and not taxable."); *see also Lukhard v. Reed*, 481 U.S. 368, 387 (1987) (Powell, J., dissenting) ("In *Glenshaw Glass*, the Court observed that '[d]amages for personal injury are by definition compensatory only,' and cited "[t]he long history of departmental rulings holding personal injury recoveries nontaxable on the theory that they roughly correspond to a return of capital . . . ." (citations omitted)).

[62] *See Francisco*, 267 F.3d at 315-16.

Thus, the tax-equality objective underpinning section 104(a)(2) counsels against excluding prejudgment interest.

Second, we note that prejudgment interest is not awarded as a substitute for lost human or financial capital. We have explicitly found that the "concept of a return of human capital lost through injury continues to support the [section 104(a)(2)] exclusion."[63] The human capital rationale holds that the "recipient of personal injury damages is in effect forced to sell some part of her physical or emotional well-being in return for money."[64] This rationale militates against excluding prejudgment interest, which serves to compensate an injured party for the purely economic harm of lost time value of money.

Third, we can find no significant difference between prejudgment interest in Louisiana and the prejudgment interest found taxable in *Brabson*, *Rozpad* and *Francisco*.[65] The Chamberlains make much of the fact that, under Louisiana law, prejudgment interest is deemed compensatory in nature. To be sure, unlike some common law states, which view prejudgment interest as serving a

---

[63] *Dotson v. United States*, 87 F.3d 682, 685 (5th Cir. 1996).

[64] *Id*.

[65] We recognize that when dealing with questions regarding the taxability of income under the Internal Revenue Code, it is well-established that "[s]tate law creates legal interests and rights," while federal law "designate[s] what interests or rights, so created, shall be taxed." *Morgan v. Comm'r*, 309 U.S. 78, 80 (1940); *see also United States v. Irvine*, 511 U.S. 224, 238 (1994); *United States v. Mitchell*, 403 U.S. 190, 197 (1971); *United States v. Bess*, 357 U.S. 51, 55 (1958); *Lyeth v. Hoey*, 305 U.S. 188, 194 (1938). We address Louisiana law here solely for the purpose of elucidating the nature of the Chamberlains' prejudgment interest award, which in turn informs whether it was received "on account of" personal injury.

punitive function, prejudgment interest in Louisiana is viewed as a form of reparation. This fact was neatly summarized by the Louisiana Supreme Court in *Trans-Global Alloy, Ltd. v. First National Bank of Jefferson Parish*:

> The defendant urges us to follow the practice of those jurisdictions which allow prejudgment interest only when the amount in controversy is either liquidated or is readily ascertainable by simple computation. That practice is reflective of the common law view of interest as punitive in nature. According to that view, when damages are reasonably ascertainable, the defendant can determine what his liability might be, and stop the accrual of interest by paying the claim; when the damages are uncertain, however, the defendant cannot determine the extent of his liability prior to trial, and it would be unjust to penalize him for failure to pay the damages before judgment. Under civil law doctrine, however, damages are viewed as *reparation* for the loss suffered by the creditor, and not as a penalty imposed on the debtor.[66]

Because prejudgment interest is viewed as reparation under Louisiana law, the Chamberlains contend that it should be classified as part of the "broad range of damages" excluded under section 104(a)(2).[67] This argument assumes that prejudgment interest must be excluded because it is awarded as part of an injured party's compensatory damages. Although it is true that, under Louisiana law, prejudgment is compensatory in nature, its taxability turns on whether it compensates an injured party for his or her personal injury. Louisiana law provides a clear answer to

---

[66] 583 So.2d 443, 457 (La. 1991) (emphasis added).

[67] *See Burke*, 504 U.S. at 234-35 (noting that § 104(a)(2) applies to awards received from suits based on tort type rights; that remedial principles figure prominently in torts; and that one of the hallmarks of tort liability is the availability of a broad range of damages to compensate the plaintiff).

22

this query: like the interest found taxable in *Brabson*, *Rozpad* and *Francisco*, prejudgment interest awarded under Louisiana law compensates an injured party for *lost time value of money*.[68] Accordingly, prejudgment interest awarded under Louisiana law is not excluded from taxation under section 104(a)(2) by virtue of its status as reparation or compensatory damages because it does not repair or compensate for personal injury.

The Chamberlains also point out that, under Louisiana law, prejudgment interest was recognized as part of a plaintiff's reparation for personal injury long before the predecessor to section 104(a)(2) was enacted.[69] While Louisiana's long history of recognizing prejudgment interest as reparation damages is undisputed, it is also true that such interest has historically been awarded on account of delay in payment.[70] Because Congress

---

[68] *See, e.g.*, *Corbello v. Iowa Prod.*, 850 So.2d 686, 706 (La. 2003) ("Prejudgment interest, which stems from the damages suffered by the victorious party, is meant to fully compensate the injured party for the use of funds to which he is entitled but does not enjoy because the defendant has maintained control over the funds during the pendency of the action." (quoting *Sharbono v. Steve Land & Son Loggers*, 696 So.2d 1382, 1386 (La. 1997))); *Hall v. Brookshire Brothers, Ltd.*, 848 So.2d 559, 574 n.7 (La. 2003) ("In tort actions generally, legal interest attaches from the date of judicial demand. Such an award of legal interest is designed to compensate a plaintiff for his loss of the use of money to which he is entitled, the use of which the defendant had during the pendency of the litigation."); *Sharbono*, 696 So.2d at 1388 ("In other words, in cases ex delicto and ex contractu, 'prejudgment interest' is awarded to make an injured party whole by compensating that party for the time-value of money to which that party was entitled from the date set by the legislature, but over which the defendant, in retrospect, had wrongfully continued to exercise dominion and control while the suit was pending.").

[69] *See Holmes v. Barclay*, 4 La. Ann. 64 (La. 1849) (interest allowed as part of damages).

[70] *See Ventrilla v. Tortorice*, 107 So. 390, 393 (1926) ("[L]*egal interest* which attaches to a judgment for damages ex delicto 'from date of judicial demand' is due for *delay* in the performance of an *obligation to pay money*; in

23

intended section 104(a)(2) to exclude amounts received on account of personal injury, amounts received on account of delay in payment as reparation for lost time value of money are taxable regardless of their historical pedigree.

A fourth and final consideration compelling us to agree with the holdings of our sister circuits is the well-established rule that exclusions from income are to be construed narrowly.[71] We have recognized that this is a "default rule" which applies in the absence of a showing that an amount is encompassed within a specific exclusion.[72] Here, the Chamberlains have failed to show that prejudgment interest received under Louisiana law is excluded under section 104(a)(2). Thus, by default such interest is not excluded.

## III

Based upon the legal arguments presented in this case, we find no compelling reason to depart from the path carved out by our sister circuits. Moreover, we find the reasoning of our sister circuits to be sound and in conformity with the language and purpose of § 104(a)(2) as interpreted and articulated by the Supreme Court. Accordingly, we hold that prejudgment interest

---

other words, for delay in paying a moneyed debt.").

[71] *See, e.g.*, *Martin v. United States*, 159 F.3d 932, 934 (5th Cir. 1998); *Lubart v. Comm'r*, 154 F.3d 539, 542 (5th Cir. 1998) (same); *Gajda v. Comm'r*, 158 F.3d 802, 805 (5th Cir. 1998) (same).

[72] *See Martin*, 159 F.3d at 934; *Julius M. Israel Lodge of B'nai B'rith No. 2113 v. Comm'r*, 98 F.3d 190, 191 (5th Cir. 1996).

awarded under Louisiana law in a personal injury suit is not excluded from taxation under § 104(a)(2). The judgment of the district court is AFFIRMED.