NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0083n.06

No. 13-2571

**FILED**

Jan 27, 2015
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| W. PAUL MAYHUE, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| CHERRY STREET SERVICES, INC., | ) | WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE: DAUGHTREY, CLAY, and COOK, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge. Plaintiff W. Paul Mayhue's employment with the predecessors-in-interest of defendant Cherry Street Health Services, formerly known as Touchstone,[1] was terminated in March 2011 after he had worked there for 32 years. Having enjoyed such a long association with his employer, Mayhue felt, somewhat understandably, that nefarious forces must have been at work to result in his termination. Seizing upon the fact that he was 63 years of age at the time, Mayhue filed suit against the defendant, alleging age discrimination in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634, and Michigan's Elliott-Larsen Civil Rights Act, Mich.

---

[1] Originally known as Adult Aftercare, the organization for which Mayhue worked changed its name over the years to Transitions, then to Transitions Community Support, then to Touchstone, before merging on October 1, 2011, with Proaction Behavioral Health Alliance and Cherry Street Health Services. Cherry Street Health Services is the surviving entity of that merger. Because the facility was known as Touchstone at the time of the events in this opinion, the names Cherry Street and Touchstone are used interchangeably.

Comp. Laws §§ 37.2101–37.2804.  The district court granted summary judgment in favor of the defendant, and Mayhue now appeals, contending that the district court erred in its rulings on various discovery disputes between the parties and that the plaintiff identified genuine disputes of fact that should have precluded summary judgment for Touchstone.  Because we conclude that the issues raised by Mayhue are without merit, we affirm the judgment of the district court.

### FACTUAL AND PROCEDURAL BACKGROUND

Touchstone was the successor-in-interest to the nonprofit entity that hired Paul Mayhue in 1979 as a case worker to provide direct services to individuals suffering from severe mental illness.  Sometime during the 1990s, Mayhue applied for and received the job as the Housing Specialist with the agency.  In that position, Mayhue was responsible for "helping the homeless and mentally ill secure housing," as well as for networking with various government officials to fulfill the responsibilities of the agency.  In 2009, however, the state grant that funded the Housing Specialist position was pulled from Mayhue's employer and transferred to the Salvation Army.

Because, by that time, Mayhue already had developed contacts with state and local governments "to further issues important to Touchstone," and because "Touchstone was financially healthy and had a surplus of revenue," Touchstone's president, Gregory Dziadosz, "allowed Mayhue to create the position of Government Relations Coordinator."  That position was funded entirely by excess revenue in Touchstone's account, and both Dziadosz and Margaret Chappell, then Touchstone's vice-president of human resources, stated, under penalty of perjury, that they warned the plaintiff "that Touchstone could only afford a Government Relations

Coordinator position for as long as Touchstone had surplus revenue sufficient to fund it because it . . . was a non-revenue position." Mayhue denied ever receiving that information.

By October 2009, Touchstone had been informed by the state agency that provided most of its funding that the method by which Touchstone would be compensated for its services would be altered. In fact, the change from "case rate" payments to payments only for documented face-to-face services lasting 15 minutes or longer resulted in a five-percent decline in revenue both for 2009 and for 2010. Consequently, sometime in 2010, Touchstone's cabinet decided to eliminate four non-revenue-producing positions—that of Adult Foster Care Coordinator, Clubhouse Advocate, Licensed Practical Nurse, and Mayhue's Government Relations Coordinator job. The individuals filling the other three positions all "were roughly twenty (20) years younger than Mayhue" and were laid off immediately. However, because Dziadosz "valued Mayhue's work with local and state political officials on mental health parity and wanted to keep him around," the plaintiff was not informed that his position was being eliminated until December 15, 2010, "well after [the other three employees in non-revenue positions] had been laid off."

Even then, Dziadosz did not lay the plaintiff off immediately. Instead, Dziadosz set up a meeting with the plaintiff on February 8, 2011, to discuss opportunities to remain with Touchstone despite the elimination of the Government Relations Coordinator position. Mayhue did not indicate interest in any of the suggested vacant positions, but when Dziadosz "expressed that the productivity levels of the Case Managers—in terms of billable hours—were less than ideal[,] Mayhue offered to help find a solution to the lower productivity."

Despite misgivings, Dziadosz instructed the plaintiff to develop a plan to address the productivity problem and be prepared to present it to the meeting of the Touchstone cabinet the

following week for its consideration.  At that subsequent meeting, however, Mayhue did not present a plan but, rather, distributed a survey to the cabinet members.  More damning, the following day, without authorization to do so, the plaintiff sent an e-mail to all Touchstone staff in the Grand Rapids office with the subject line:  "Introducing W. Paul Mayhue, Governmental Relatio[n]s Coordinator as Productivity Person for the Agency."  The body of the e-mail indicated that Mayhue was adding "productivity for the agency" to his existing responsibilities at Touchstone.  He then proceeded to explain in detail many of his own accomplishments before concluding, "I did not want to begin to ask staff questions about productivity and you not have an idea of who I am or what I do or have done."

Other employees of Touchstone were outraged at the fact that a new position apparently had been created but had not been posted for others to apply to fill it.  Even Mayhue conceded that "[e]verybody . . . became so upset about the letter" and that the "letter just muddied the water totally" such "that nobody in the agency staff or agency leadership would deal with me because of that letter."

Dziadosz also recognized that the plaintiff had "destroyed his credibility with the staff." Consequently, on February 18, 2011, he offered the plaintiff three options:  "(1) take an open Case Manager position, (2) terminate employment and act as an independent contractor to Touchstone for specific projects, or (3) terminate employment and end his relationship with Touchstone."  When Mayhue made it clear that he was not interested in applying for a job as a case manager, and when Dziadosz realized that "Mayhue could not help Touchstone with productivity," he determined that the plaintiff's further employment with Touchstone was not feasible.  Dziadosz thus proposed "three choices as to how [that] employment could end."  He explained that Mayhue could seek to associate with Touchstone as an independent contractor; he

could retire and accept a retirement benefit of $3,200, which represented a payment of $100 for each of the 32 years the plaintiff had been employed with the agency; or he could choose to be laid off effective March 31, 2011, and thus be entitled to unemployment benefits and be authorized to "interview for any open position at Touchstone to which he applied."

Although contemporaneous notes of the meeting taken by Cleo Corliss, Touchstone's director of operations and compliance, indicated that "Paul [would] look into lay-off and retirement and possible contract—let GDz know by end of next wk.," Mayhue failed to indicate his preferred method of separation from the agency. As a result, Dziadosz decided to lay off the plaintiff effective at the end of March 2011. A letter formalizing that decision was sent to Mayhue, accompanied by a list of all current job openings at Touchstone. However, Mayhue never applied for, or even expressed interest in, another position with Touchstone.

According to Dziadosz, "[f]ollowing Mayhue's layoff, Touchstone never employed another Government Relations Coordinator. Similarly, Touchstone never created a productivity manager position, nor did it assign productivity responsibilities to one particular employee. In short, Mayhue was not replaced and his proposed productivity position never came to fruition."

Rather than applying for another position with Touchstone, Mayhue chose to file suit against the defendant in federal court, without the assistance of an attorney, alleging simply that he was laid off "so that the agency could hire younger people." Eventually, the plaintiff retained an attorney, who filed an amended complaint. In that subsequent filing, Mayhue asserted that his discharge from Touchstone was due to his age and thus violated the provisions of the ADEA and the Elliott-Larsen Civil Rights Act. He further insisted that the defendant failed to hire him to

fill vacant positions at the agency, instead offering the positions to younger, less-experienced individuals.

The magistrate judge assigned to the case entered a case-management order on October 4, 2012, directing the parties to complete all discovery in the litigation by May 30, 2013, some seven months from the date of entry of that order. Mayhue waited four months, however, until February 8, 2013, before serving the defendant with his first set of interrogatories and a request for production of documents.. The defendant served its responses on March 12, 2013, but Mayhue deemed those responses inadequate. Consequently, he filed a motion to compel with the court on April 29, 2013, and a hearing on that motion was conducted by the magistrate judge on May 20. At that hearing, and in a written order filed the following day, the magistrate judge denied the motion to compel in its entirety. In doing so, the magistrate judge concluded that the defendant's responses to the discovery requests were adequate and that plaintiff's counsel had failed to comply with a local rule requiring counsel involved in discovery disputes to attempt in good faith to resolve disagreements with opposing counsel in person or by telephone prior to involving the court in the battle. The magistrate judge further denied Mayhue's cursory request for a 60-day extension of the discovery deadline because counsel "completely failed to establish good cause for an amendment to the case management order."

Still not satisfied with the manner in which the discovery process had been handled, Mayhue filed his objections to the magistrate judge's order with the district court. In its own written order, the district court discussed Mayhue's objections to the defendant's discovery responses before overruling each of those objections, as well as denying Mayhue's request for an extension of the discovery deadline.

With all discovery disputes resolved, the defendant then filed with the district court a motion for summary judgment in its favor.  Addressing first the plaintiff's assertion that he was terminated because of his age, the district court concluded that Mayhue failed to establish a *prima facie* case of age discrimination under either the ADEA or Michigan's comparable state statute.  Moreover, the court determined that Mayhue was unable to show that the legitimate, nondiscriminatory reason for the termination offered by the defendant was a pretext for forbidden discrimination.  The district court further concluded that Mayhue failed to establish a *prima facie* case of age discrimination on his failure-to-hire claim because he never applied for any of the positions for which he claimed to have been passed over in favor of younger employees.  The district court thus dismissed the plaintiff's amended complaint in its entirety.

Mayhue now appeals not only that summary judgment ruling but also the district court's denial of his objections to the defendant's discovery responses.

## DISCUSSION

*Discovery Disputes*

On appeal, Mayhue persists in arguing that the defendant failed to comply fully with his requests for information and documents during the discovery process.  "We review a district court's discovery-related rulings under the highly deferential abuse-of-discretion standard." *Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014) (citation omitted).  "An abuse of discretion occurs when (1) the district court's decision is based on an erroneous conclusion of law, (2) the district court's findings are clearly erroneous, or (3) the district court's decision is clearly unreasonable, arbitrary or fanciful." *Beil v. Lakewood Eng'g and Mfg. Co.*, 15 F.3d 546, 551 (6th Cir. 1994) (citation omitted).

In the district court, Mayhue claimed that the defendant did not respond adequately to nine specific discovery requests. On appeal, he now addresses the alleged inadequacy of the defendant's responses to only five of those—two interrogatories and three requests for production.

**Interrogatory No. 1**

*Plaintiff's Request* In Interrogatory No. 1, Mayhue asked, "Did you rely on any documents to aid in responding to these Interrogatories? If so, please identify such documents."

*Defendant's Response* In its initial response, the defendant answered simply, "Yes. Cherry Street will produce documents responsive to this interrogatory in its possession, custody, or control at a time and place convenient to counsel." When Mayhue's counsel failed to contact defense counsel to arrange for the production of the documents, the defendant "produced all documents on which counsel relied by mail." However, such a "document dump" did not comply with the plaintiff's request for identification of the documents used in responding to the discovery request. Consequently, in filing its response to the plaintiff's motion to compel, the defendant stated explicitly that "it relied on documents Bates Numbered CSHS 000–CSHS 0083 in responding to Plaintiff's interrogatories."

*Magistrate Judge's Ruling* The magistrate judge expressed discontent with the defendant's initial responses to the plaintiff's request and ruled that "to give those documents shuffled in with all the other documents leaves the interrogatory unresponded to . . . ." However, after being informed that the defendant had later referenced Documents CSHS 1 through CSHS 83, the magistrate judge recognized that the defendant "took care of that albeit in your response to the motion [to compel]."

*District Court's Ruling*  The district court concurred in the magistrate judge's rationale and concluded, "Regardless of whether Defendant's initial response was sufficient, it now appears to have given a complete answer to this interrogatory."  In light of the undisputed fact that the defendant did indeed provide the requested documents and did ultimately identify those documents on which it relied in answering the discovery request, it cannot be said that the district court abused its broad discretion in ruling as it did on the challenge to the response to Interrogatory No. 1.

**Interrogatory No. 8**

*Plaintiff's Request*  In Interrogatory No. 8, Mayhue asked the defendant to "identify every person hired from 1/1/2010 through 8/1/2011" and to provide the position, education, age, and experience of each such hire.

*Defendant's Response*  As it did in its responses to most of the plaintiff's discovery requests, the defendant answered Interrogatory No. 8 by stating initially, "Cherry Street objects to this Interrogatory because it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence."  Then, "[s]ubject to and without waiving these objections, or the General Objections," the defendant proceeded to list the names and positions of five individuals, ages 26-57, hired in March and April 2011 "*for positions to which Plaintiff could have elected to apply*."  (Emphasis added.)

*Magistrate Judge's Ruling*  In addressing this aspect of Mayhue's motion to compel, the magistrate judge disagreed with the plaintiff's contention that the listing of the five hires did not necessarily preclude the possibility that other individuals also were hired by the defendant.  Instead, noting that a list of people in a response to an interrogatory should be presumed to be

-9-

all-inclusive, the magistrate judge concluded, "I don't see that there is anything that you asked for that is in the interrogatories that they haven't answered."

*District Court's Ruling* In ruling that the defendant "undisputedly answered this interrogatory," the district court dismissed Mayhue's allegation that the response was incomplete by noting that the plaintiff "fails to argue why the omitted material would be relevant to his suit." At the hearing before the magistrate judge on the motion to compel, the plaintiff did argue that the defendant's limitation of its response to those positions for which Mayhue "could have elected to apply" deprived him of critical and relevant information. Specifically, Mayhue maintained that the defendant's argument that he was laid off due to lack of funding could be undermined by evidence that numerous individuals were being hired throughout the agency, especially to positions for which the plaintiff might not have been qualified. Such an argument potentially did have merit; however, nowhere in Mayhue's written objections to the magistrate judge's ruling did the plaintiff reiterate that basis for reversing the ruling. Instead, Mayhue's objection stated only that "[w]hile the Defendant provided a partial answer, their failure to completely answer the interrogatory is a failure to disclose." Not having been alerted to the true substance of the plaintiff's objection to the answer provided by the defendant, the district court cannot be said to have abused its discretion in denying the motion to compel compliance on this ground.

**Request to Produce No. 1**

*Plaintiff's Request* In his first request for production of documents, Mayhue asked the defendant to "provide all electronic communications between all members of the cabinet from 1/1/2010 through 12/31/2011 pertaining to reductions in staff."

*Defendant's Response*  In its response, the defendant again claimed that the request both was overbroad and sought irrelevant evidence.  Nevertheless, the defendant promised to "produce responsive documents in its possession, custody, or control at a time and place convenient to counsel."  At the hearing on the motion, counsel for the defendant assured the magistrate judge that "[t]hose were provided.  To the extent any existed those were provided."

*Magistrate Judge's Ruling*  In light of defense counsel's assertion that all relevant, requested information had been provided to the plaintiff, the magistrate judge recognized, "Then that's the answer to that."

*District Court's Ruling*  The district court refused to compel further disclosure relevant to this request for production, in large part because "Mayhue does not argue that Defendant failed to produce any responsive documents."  The record before this court contains no evidence suggesting that the district court abused its discretion in making that factual finding.

**Request to Produce No. 2**

*Plaintiff's Request*  Mayhue's second request for documents asked broadly for "all electronic communications from and between any staff from 1/1/2010 through 3/1/2011 pertaining to Paul Mayhue."

*Defendant's Response*  The defendant objected to this request, maintaining that it was "overly broad and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence."  Consequently, the defendant initially did not produce any of the requested information.

*Magistrate Judge's Ruling*  The magistrate judge stated his belief that the request indeed was too broad and was not limited sufficiently.  He thus sustained the defendant's objection to the request but informed the plaintiff that he was free to "ask for something more tailored to the issues in this case."

*District Court's Ruling*  The district court concurred in the magistrate judge's determination.  In doing so, the district court noted that the request for all electronic communications over a 14-month period "pertaining to" the plaintiff was "significantly overbroad, not being limited to communications relating to Mr. Mayhue's termination or even his employment.  As written, the request appears calculated only to increase Defendant's defense costs."  Without question, Mayhue failed to limit his request for information to evidence relevant to the litigation.  The district court thus did not abuse its discretion in denying the request.

**Request to Produce No. 3**

*Plaintiff's Request*  On appeal, Mayhue also contends that the district court should have compelled the defendant to comply with his third request for production of documents.  In that request, the plaintiff asked Cherry Street to "provide the defendant's budgets for the years 2009, 2010 and 2011."  According to the plaintiff, the requested information "would show any reductions in funding" by the defendant and "is relevant in addressing [Cherry Street's] Affirmative Defenses."

*Defendant's Response*  In its initial response, the defendant offered yet another blanket objection based on its opinion that the request sought information that was neither relevant nor calculated to lead to admissible evidence.  At the hearing on the plaintiff's motion to compel, however, counsel for the defendant offered, "[W]e're happy to turn them over subject to entry of a

protective order. I mean, this is confidential financial information. . . . So if he wants to propose a protective order I'm happy to provide these."

*Magistrate Judge's Ruling* The magistrate judge again chastised plaintiff's counsel for seeking to involve the court in the discovery dispute before seeking to work out any disagreements with defense counsel, either in person or over the telephone. The magistrate judge thus denied the motion to compel production of the budgetary information "without prejudice[,] so try to work it out. Try to listen to him and he'll listen to you and that's how it's supposed to work."

*District Court's Ruling* Mayhue argues that the district court abused its discretion in not compelling the defendant to produce the three years of budgets the plaintiff requested. In fact, however, the district court noted that the defendant agreed to produce the documents subject to a suitable protective order, thus resolving the plaintiff's objection.

**Request for Extension of Discovery Deadline**

*Plaintiff's Request* On April 29, 2013, approximately one month prior to the district court's discovery deadline, Mayhue filed his motion to compel responses to his discovery requests. Without further explanation or support, he concluded that motion with the single sentence, "The Plaintiff also request [sic] the Discovery be extended 60 days from the date the defendant is ordered to comply with discovery." Furthermore, in his brief in support of the motion, he also failed to suggest any reason for granting such an extension and, instead, simply requested that the court "[e]xtend Discovery 60 days from the date of compliance in the Order to compel."

*Defendant's Response* At the hearing on the plaintiff's motion to compel, defense counsel placed on the record his objection to any extension of the discovery period without a showing of

good cause for the amendment to the case-management order. Counsel further explained that the court's customary six-month discovery window had not been shortened, and that the delay on the part of the plaintiff in serving his discovery requests should not justify an extension of that period.

*Magistrate Judge's Ruling* The magistrate judge noted that Rule 16(b)(4) of the Federal Rules of Civil Procedure provides that a scheduling order "may be modified only for good cause and with the judge's consent." Not having heard any good cause stated by the plaintiff, the magistrate judge thus denied the request for an extension of the discovery period.

*District Court's Ruling* The district court concurred with the magistrate judge that "the parties have had more than enough time to pursue discovery, given that Defendant's responses to Mayhue's requests were not improper." The decision to extend the discovery period is committed to the district court's discretion, and the court did not abuse that discretion in denying the plaintiff's request in the absence of any demonstration of good cause for the failure to comply with the original schedule. *See Leary v. Daeschner*, 349 F.3d 888, 907 (6th Cir. 2003).

In addressing the plaintiff's discovery issues, the district court concluded that the defendant had either complied with the plaintiff's requests, agreed to do so in a timely manner, or was not required to do so because of the improperly broad scope of the request. We review such a determination only for an abuse of discretion. Nothing in the record before this court on appeal supports a conclusion that the district court's broad discretion was abused. We thus conclude that there is no merit to the plaintiff's first issue on appeal.

*Age-Discrimination Claim*

In his substantive challenge on appeal, Mayhue contends that the district court's grant of summary judgment to Touchstone was improper because he had identified sufficient evidence to suggest that his employment with Touchstone was terminated solely because he was, at that time, 63 years of age.  Moreover, he insists that the defendant also discriminated against him in the hiring for other positions within the agency because of his age.

We review *de novo* the grant of summary judgment by a district court.  *See Dodd v. Donahoe*, 715 F.3d 151, 155 (6th Cir. 2013).  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed R. Civ. P. 56(a).  A genuine dispute of material fact exists only when, assuming the truth of the non-moving party's evidence and construing all inferences from that evidence in the light most favorable to the non-moving party, there is sufficient evidence for a trier of fact to find for that party.  *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).  A non-moving party cannot withstand summary judgment, however, by introduction of a "mere scintilla" of evidence in its favor.  *Id.*

The ADEA makes it unlawful for an employer covered by the Act "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  Thus, an ADEA plaintiff must "establish that age was the 'but-for' cause of the employer's adverse action."  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009); *see also Bondurant v. Air Line Pilots Ass'n, Int'l*, 679 F.3d 386, 394 (6th Cir. 2012).  A plaintiff may satisfy that burden through the production of either direct or

circumstantial evidence of age discrimination. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (*en banc*) (citing *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997)).  In this appeal, Mayhue attempts to utilize both methods to establish his right to relief.

As his sole "direct" evidence of age discrimination on the part of Touchstone, Mayhue points to an e-mail from Gregory Dziadosz to Margaret Chappell, recounting Dziadosz's offer of a retirement bonus:

> I informed [the plaintiff] that he will either be laid off at the end of the day March 31, or since he is over 62, he would be eligible for retirement effective the same. He will have 32 years of service on that date, so I told him, consistent with past practice, that he could receive a one time payment of $3,200 if he chose that option.

Mayhue insists that this reference to his age in connection with the discussion of a possible retirement would allow a trier of fact to conclude that, "but for [Mayhue] reaching the retirement age he would not have been laid off."  However, the plaintiff has presented Dziadosz's e-mail comments completely out of context.  In fact, Dziadosz wanted to *retain* the plaintiff as an employee but, because of budgetary concerns, the only manner in which he could do so was if Mayhue applied for another position with the agency—an option the plaintiff refused to exercise. The mention of possible retirement was made only as one of three alternatives available to Mayhue.

Even taking the e-mail comments out of context, the plaintiff has failed to establish direct evidence of age discrimination.  We have held that even questions put directly to an employee about his or her retirement plans "do not alone constitute direct evidence of age discrimination." *Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 724 (6th Cir. 2012).  The district court did not

err in granting summary judgment to the defendant on Mayhue's claim that he had proffered direct evidence of discrimination.

If a plaintiff is unable to identify direct evidence of discrimination in an ADEA case, he or she still may seek to prove age discrimination under the now-familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981).  Pursuant to that analytical construct, a plaintiff first must establish a *prima facie* case of age discrimination.  *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998).  If the plaintiff can overcome that hurdle, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its adverse employment action.  *Id.*  Upon satisfaction of that burden, the plaintiff must respond by showing that the employer's purported rationale for its decision was a mere pretext for intentional age discrimination.  *Id.*

In order to establish a *prima facie* case of age discrimination under the ADEA, a plaintiff must offer evidence that, if believed, would show:  (1) that he is a member of a protected class; (2) that he was subject to an adverse employment action; (3) that he was otherwise qualified for the position he held; and (4) that he was replaced by a younger employee outside of the protected class.  *See Geiger v. Tower Auto.*, 579 F.3d 614, 622 (6th Cir. 2009).  When, as here, the layoff at issue is alleged to be part of a workforce reduction, the fourth prong of the *prima facie* case analysis requires a plaintiff to offer "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons."  *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 265 (6th Cir. 2010) (quoting *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990)).  Moreover, in satisfying the fourth prong of a plaintiff's *prima facie* case, it is not enough to show that "another employee

is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties." *Barnes*, 896 F.2d at 1465 (citation and footnote omitted).

The parties to this appeal do not dispute that Mayhue has proven the first three elements of his *prima facie* case. They disagree sharply, however, over whether the plaintiff can establish the fourth element. In evaluating this dispute, we recognize that a plaintiff's burden in establishing a *prima facie* case of discrimination is not intended to be onerous. *Burdine*, 450 U.S. at 253. Even so, Mayhue has failed to establish that he was replaced as Government Relations Coordinator by a younger employee or that the agency hired another person to increase case-manager productivity. He also has not provided the "additional direct, circumstantial, or statistical evidence" necessary to satisfy the fourth prong of the *prima facie*-case framework in a work-force-reduction scenario.

First, although the plaintiff submits that "it defies credibility that there was not an individual assigned to increase productivity," the record is completely devoid of any evidence that such a position was created or filled at the agency after Mayhue's termination. Gregory Dziadosz's sworn declaration states unambiguously:

> Following Mayhue's layoff, Touchstone never employed another Government Relations Coordinator. Similarly, Touchstone never created a productivity manager position, nor did it assign productivity responsibilities to one particular employee. In short, Mayhue was not replaced and his proposed productivity position never came to fruition.

The plaintiff himself offers nothing other than his unsupported supposition to counterbalance the defendant's assertion.

Additionally, Mayhue's own testimony during his deposition refutes any claim that he was "replaced" as Government Relations Coordinator.  Indeed, he admitted that he had no facts to dispute the defendant's claim that Mayhue's position "was being eliminated because of budget concerns," and he conceded that he had no facts "to support the idea that [he was] replaced by somebody" at Touchstone.

Nor does the appellate record contain any evidence to support the proposition that the defendant singled out Mayhue for discharge for impermissible reasons.  As was made abundantly clear from the deposition testimony before the court, Dziadosz and other Touchstone management officials struggled mightily to keep Mayhue as an employee so as to benefit from his governmental-relations experience.  Due to the non-revenue-producing nature of the plaintiff's position, however, the defendant was forced to reorganize its employee-organizational structure, and Mayhue refused even to apply for any of the alternate positions suggested by Touchstone's management.  Moreover, the plaintiff has offered no evidence of any hostility shown him by any Touchstone employee as a result of his age.  Absent such a showing, Mayhue cannot satisfy even the less-than-onerous burden of establishing a *prima facie* case of age discrimination.  The district court thus did not err in granting summary judgment to the defendant on Mayhue's claim of improper termination.

Even if Mayhue had succeeded in establishing his *prima facie* case of age discrimination, an analysis of the remainder of the *McDonnell Douglas* decisional framework indicates that the plaintiff could not prove his entitlement to the result he desired.  There is no dispute that the defendant articulated a legitimate, nondiscriminatory reason for terminating Mayhue's employment.  Because the agency was facing a severe budget shortfall, Touchstone made the sound economic decision to eliminate non-revenue-producing positions within the organization.

The fact that the other employees laid off as a result of that decision were much younger than Mayhue provides further support for the conclusion that the defendant's decision was not motivated by discriminatory animus toward older employees.

Once the defendant articulated a legitimate, nondiscriminatory reason for its adverse employment action, the plaintiff was required to refute that justification "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000) (citation omitted). Mayhue now argues that the defendant's proffered reason for the termination of his position—the need to save money—had no basis in fact because, despite cutting the plaintiff's position, the agency sought to continue to pay him as a productivity manager and encouraged him to apply for other positions within the agency. This argument demonstrates not only Mayhue's misunderstanding of the record but also of the defendant's underlying rationale for its decision.

First, the record on appeal is clear that the defendant never offered Mayhue a position as productivity manager and, in fact, never created such a position. Second, to the extent that the agency allowed Mayhue to continue on the payroll while exploring the option of creating the subject position, that fact supports the defendant's claim that it was interested only in saving money, not in eliminating the positions of older employees. Finally, the fact that Touchstone continued to hire individuals for other positions and also encouraged the plaintiff to apply for those positions does nothing to undermine its claim that Mayhue was terminated in an effort to address a budget crisis. The funding for the plaintiff's position as Government Relations Coordinator had ended, and the position itself generated no additional income for the agency. Other positions, however, either came with outside funding sources or were revenue-generating

due to the fees that were paid for the services rendered. The plaintiff, therefore, has failed to point to any evidence that a rational factfinder could credit to support a conclusion that the reason proffered by the defendant for eliminating Mayhue's position was a mere pretext for prohibited discrimination.

Mayhue also asserts that age discrimination alone can explain the defendant's refusal to hire him for other positions within the agency. We have recognized that to succeed on such a claim, a plaintiff must first state a *prima facie* case of discrimination in failing to hire by showing that: "(1) [ ]he was a member of a protected class; (2) [ ]he applied for and was qualified for the position . . . ; (3) [ ]he was considered for and denied the position; and (4) [ ]he was rejected in favor of another person with similar qualifications who was not a member of [the] protected class." *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1095 (6th Cir. 1996) (citation omitted). Although Mayhue was a member of a protected class, he refused to apply for any of the open positions at the agency that were identified by the defendant. Consequently, by his own choice, he could not be considered for or denied any such position, and he could not be rejected in favor of a non-protected-class individual. Because Mayhue thus could not state a *prima facie* case on his failure-to-hire claim, the district court correctly granted summary judgment to the defendant on that cause of action as well.

Although he fails to mention it anywhere in the argument section of his appellate brief, Mayhue's amended complaint also sought relief under the anti-discrimination provisions of Michigan's Elliott-Larsen Civil Rights Act. Pursuant to the provisions of Michigan Compiled Laws § 37.2202(1)(a), it is illegal for an employer to "[f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of . . . age . . . ."

Under the Elliott-Larsen Civil Rights Act, as under the ADEA, "[i]n cases involving indirect or circumstantial evidence [of discrimination], a plaintiff must proceed by using the burden-shifting approach set forth in *McDonnell Douglas . . . .*" *Sniecinski v. Blue Cross & Blue Shield of Mich.*, 666 N.W.2d 186, 193 (Mich. 2003) (citations omitted). Thus, for the same reasons that the district court appropriately granted summary judgment to the defendant on Mayhue's ADEA claim, the district court also properly granted summary judgment to the defendant on the plaintiff's state-law claim.

## CONCLUSION

The district court is granted broad discretion in ruling upon discovery disputes. The plaintiff has failed to offer evidence or argument that would indicate that an abuse of that discretion occurred here. Furthermore, the plaintiff failed to establish even a *prima facie* case of age discrimination under either the ADEA or under the Elliott-Larsen Civil Rights Act. Even if we were to conclude that Mayhue did satisfy his initial burden under the *McDonnell Douglas* burden-shifting framework applicable in this case, the plaintiff cannot point to any material fact that would allow a finder of fact to conclude that the defendant discriminated against the plaintiff based upon age either in terminating Mayhue's employment or in failing to hire him for other positions within the defendant agency. For these reasons, we AFFIRM the district court's grant of summary judgment to the defendant.